(No. 65128.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. THOMAS CLANKIE, Appellant.

*Opinion filed October 20, 1988.*

G. Joseph Weller, Deputy Defender, and Kim M. DeWitt, Assistant Defender, of the Office of the State Appellate Defender, of Elgin, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Shawn W. Denney, Solicitor General, and Terence M. Madsen and Sally L. Dilgart, Assistant Attorneys General, all of Chicago, of counsel), for the People.

JUSTICE CUNNINGHAM delivered the opinion of the court:

In the circuit court of Ogle County, defendant Thomas Clankie was charged by three separate indictments with three counts of residential burglary in that, on June 11, 13, and 14, 1984, he entered the dwelling place of J. F. McNeil with intent to commit a theft therein (Ill. Rev. Stat. 1983, ch. 38, par. 19—3). A jury found him guilty on counts I and III (involving incidents on June 11 and 14) and not guilty on count II (involving incidents on June 13). Defendant was granted a new trial, due to evidence that his attorney, while representing him, was also representing a client with whom defendant had a conflict of interest.

Before the second trial was held, a fourth count of residential burglary of the J. F. McNeil residence was filed by information, involving incidents allegedly occurring on June 27, 1984. Following the second trial a jury verdict was returned finding defendant guilty on count IV and not guilty on all remaining counts.

Defendant appealed his conviction, alleging that use at the second trial of certain self-incriminating tape-recorded statements made by him violated his sixth amendment right to counsel. The appellate court (154 Ill. App. 3d 197) affirmed the conviction, finding that, at the time the statements were recorded, defendant's right to counsel with respect to the June 27 burglary had not yet attached. Pursuant to Supreme Court Rule 315 (107 Ill. 2d R. 315), we granted defendant's petition for leave to appeal.

The sole issue presented for our review is whether the use of certain incriminating tape-recorded statements of defendant, surreptitiously obtained through the help of Debra Schreck, a government informant and former friend of defendant, violated defendant's sixth amendment right to counsel. (The sixth amendment right to counsel applies to defendants in State prosecutions via the fourteenth amendment. (*Gideon v. Wainwright* (1963), 372 U.S. 335, 9 L. Ed. 2d 799, 83 S. Ct. 792.)) In order to understand the relevance of these tape-recorded statements and how they were obtained, it is necessary to review certain evidence presented at the first trial, as well as events occurring between the two trials. The facts are fully set forth in the appellate court's decision and will be summarized herein only as necessary to a resolution of the issue before us.

At the first trial, Frank Boeck, a witness for the People, testified to incidents allegedly occurring on June 11, 13, and 14, 1984. He testified that on each of these dates he and defendant entered the McNeil residence and removed certain items. He described to some extent how the plan to enter upon the property developed, how he and defendant entered upon the property, what they removed from the premises on each occasion, and what they did with the removed items. Another witness, Debra Schreck, testified on behalf of the defense. She

stated that she was a former girlfriend of Boeck and that she and Boeck had lived with defendant and his wife during part of the time in question. She testified regarding her knowledge of the events in question, generally inculpating Boeck and exculpating defendant.

During the time between the two trials, Debra Schreck contacted the police. She indicated that, at defendant's request, she had lied during the first trial, and that she wished to tell the truth in any future proceedings. She agreed to cooperate in a continuing investigation of the crimes, including a newly suspected offense of defendant, subornation of perjury. (The suspected offense of subornation of perjury was based on defendant's allegedly inducing Debra Schreck to lie on his behalf at the first trial.)

Pursuant to a warrant, Debra Schreck wore a wiretap device and visited defendant on several occasions, under the pretense of wanting to rehearse her testimony for the second trial, but with the secret intent of getting defendant to admit that he had induced her to lie at the first trial. During these conversations defendant made statements implicating himself in a June 27 burglary and theft at the McNeil residence. He stated that Boeck had "the wrong date," that "Butch [Frank Boeck] said the 14th ***. It was the 27th. *** If he'd have remembered the 27th, I'd have been done." Defendant described the means by which he and Boeck had gained entry, and his description corresponded with the mode of entry described by Boeck at the first trial as Boeck testified regarding an alleged June 11 burglary. Defendant described specific items which they had removed on June 27; these were in part the same items described by Boeck as having been removed on June 11, 13, and 14.

It was based on these tape-recorded statements that the People added count IV, alleging that a burglary occurred on June 27, 1984; it was these tapes which un-

doubtedly played a large role in convincing the jury that defendant had in fact committed the burglary on June 27; and it was these tapes which defendant has argued were obtained in violation of his sixth amendment right to counsel.

The parties do not dispute that defendant's right to counsel had attached at the time of the taping with respect to the pending charges. (See *Brewer v. Williams* (1977), 430 U.S. 387, 398, 51 L. Ed. 2d 424, 436, 97 S. Ct. 1232, 1239 (stating that "[w]hatever else it may mean, the right to counsel granted by the Sixth and Fourteenth Amendments means at least that a person is entitled to the help of a lawyer at or after the time that judicial proceedings have been initiated against him").) The parties also do not dispute that the surreptitiously recorded tapes were inadmissible with respect to the charges already pending as of the date of the recordings. (See *Maine v. Moulton* (1985), 474 U.S. 159, 88 L. Ed. 2d 481, 106 S. Ct. 477.) The parties do disagree, however, as to whether the taped statements could be used against defendant with respect to the alleged June 27 offense.

We find that *Moulton* is controlling and that, in light of *Moulton*, the taped statements were inadmissible not only with respect to charges pending at the time the tapes were made, but also with respect to the closely related June 27 offense.

In *Moulton*, the defendant was indicted on four counts of theft by receiving stolen property, as was a codefendant, Gary Colson. Following indictment, Colson received anonymous threatening calls regarding the charges pending against him and defendant Moulton. He reported these to the police, and asked to meet with the police about the charges. The police told him to first contact his lawyer. Several days later, Colson met with Moulton, who suggested killing a particular State's wit-

ness. Several days later, Colson and his attorney met with the police. Colson disclosed Moulton's suggestion of killing a witness, and also confessed to his participation with Moulton in the crimes for which they had been indicted. Colson further offered the information that not only had they *received* stolen property, but they had also actually broken into a building and stolen some of the items. In return for a promise that no additional charges would be filed against him, Colson agreed to cooperate in investigating Moulton's pending charges as well as Moulton's plan to kill a witness.

Subsequently, Colson wore a recording device in a meeting with Moulton. During that meeting the two discussed the pending charges and distinguished the allegations from what actually happened. The idea of eliminating witnesses was also briefly mentioned, with Moulton contending that he did not think the plan would work.

Apparently largely based on evidence obtained during the meeting, the State had the pending indictments against Moulton dismissed and obtained seven new indictments against him. These indictments realleged the pending charges and charged Moulton, in addition with burglary, arson and three more thefts. Moulton eventually proceeded to a bench trial on these indictments, at which portions of the tape of the meeting were admitted. The court found defendant guilty of burglary and theft.

The supreme court of Maine and the United States Supreme Court agreed with defendant that his convictions must be vacated because use of the tape-recorded statements violated his sixth amendment right to counsel. The United States Supreme Court, in a sharply divided opinion, vacated the convictions and held that the sixth amendment guarantees the accused, at least after the initiation of formal charges, the right to rely on counsel as a "medium" between him and the State. The Court stated that this right is not violated when the

State, by luck or happenstance, obtains incriminating statements from the accused after the right to counsel has attached. The Court further found, however, that the use of the body wire was a knowing exploitation, stating:

> "[K]nowing exploitation by the State of an opportunity to confront the accused without counsel being present is as much a breach of the State's obligation not to circumvent the right to the assistance of counsel as is the intentional creation . of such an opportunity. Accordingly, the Sixth Amendment is violated when the State obtains incriminating statements by knowingly circumventing the accused's right to have counsel present in a confrontation between the accused and a state agent." *Moulton*, 474 U.S. at 176, 88 L. Ed. 2d at 496, 106 S. Ct. at 487.

The People in the instant case concede that, in accordance with *Moulton*, they were precluded from using the tape recordings against defendant with regard to charges pending when the recordings were made. (The tape recordings were actually admitted against defendant on all charges at the second trial, but this occurred at least in part because defense counsel specifically stated that he wished to have all the burglary counts tried jointly.) The People, however, argue that statements of the June 27 offense were admissible, relying on the following language in *Moulton*:

> "Incriminating statements pertaining to other crimes, as to which the Sixth Amendment right has not yet attached, are, of course, admissible at a trial of those offenses." (474 U.S. at 180 n.16, 88 L. Ed. 2d at 499 n.16, 106 S. Ct. at 490 n.16.)

The People also cite *Hoffa v. United States* (1966), 385 U.S. 293, 17 L. Ed. 2d 374, 87 S. Ct. 408, which sets forth this same principle. .

It is important to note that, although the *Moulton* decision reaffirmed the importance of formal accusation as the point at which a right to counsel attaches, the Court also recognized that some technically distinct, formally

charged offenses are actually so closely related to certain offenses for which formal charges have not been made that the right to counsel for the charged offense cannot constitutionally be isolated from the right to counsel for the uncharged offense. The Court recognized this by vacating *all* of defendant Moulton's convictions—burglary *and* theft—even though at the time of the surreptitious recording, formal charges on the burglary offense had not been commenced. This same principle has been implicitly recognized, though without discussion, in *Brewer v. Williams* (1977), 430 U.S. 387, 51 L. Ed. 2d 424, 97 S. Ct. 1232. In *Williams*, defendant had been indicted for abduction when, before meeting with the attorney who was to represent him, and despite his promise that after meeting with that attorney he would tell "the whole story," the police deliberately elicited his admission that he had killed the abducted victim. He was *subsequently* indicted for first degree murder, and the Court held that use of his admission in the murder trial violated his sixth amendment right to counsel.

The United States Supreme Court has thus apparently assumed that sixth amendment rights of one formally charged with an offense extend to offenses closely related to that offense and for which a defendant is subsequently formally accused. It is not our place to evaluate the soundness of such a rule from either a constitutional or practical standpoint. Moreover, although we note that the United States Supreme Court has not yet explained just how closely related the two offenses (the offense charged prior to and subsequent to the elicitation of the challenged evidence) must be for the rule to apply, we need not and do not here attempt to delineate the parameters of the rule's application. This is because even if (for exclusion of the evidence regarding the subsequently charged offense) the two offenses must be *extremely* closely related, the required relationship exists in this

case. This becomes readily apparent from examining testimony of the State's key witness, Frank Boeck, whose confession prompted the arrest of defendant, with the tape-recorded statements of defendant.

While being surreptitiously recorded, defendant admitted that he and Boeck entered the house on June 27. He stated that Boeck entered through the basement, went upstairs through the basement and opened a door through which he (defendant) entered. According to defendant, they removed a television set and record player that night from the house. They also broke into an adjacent shed and removed a sump pump and numerous other items (though the time of entry into the shed is not apparent from listening to the tapes). As mentioned earlier, defendant also referred to inaccuracies in the account which Boeck gave at the first trial. Defendant stated that "Butch said the 14th ***. It was the 27th." And at another point defendant said, "If he'd have remembered the 27th, I'd have been done."

Statements of Boeck (made at a preliminary hearing, relayed by Officer Wilkinson at a grand jury proceeding, and subsequently made at both trials) are strikingly similar to the statements of defendant. Boeck's memory regarding the dates was initially very vague, though he eventually settled on June 11, 13, and 14. On June 11, according to Boeck, he and defendant approached the residence. Boeck entered through the basement and went up and opened the door (apparently through which defendant entered). The two rummaged through the house and removed knickknacks, a lamp, and a prescription drug. They returned a few days later, broke into the shed and loaded numerous items (including a sump pump) into their vehicle, and took those items to defendant's home. Several hours later (around 12:30 a.m. on June 14) they returned, entered the house and removed a television and record player.

Admittedly, the accounts of Boeck and defendant are not identical. But it is not infrequent that witnesses recalling an identical sequence of events will have variations in their accounts. Clearly, both individuals were testifying to the same course of conduct: the unlawful joint entry into the McNeil residence in June 1984, and removal therefrom of certain specified items. The People cannot credibly contend that they initially contemplated a separate offense simply because they initially thought that defendant and Boeck entered the residence on June 11, 13, and 14, when the date of the joint entry was actually on June 27, at which time the two removed items that the People initially thought were removed on June 13. The People were contemplating the same course of conduct as that for which they eventually obtained the conviction in question, but the People initially simply had not uncovered all of the specific details relating to defendant's conduct.

We thus conclude that the appellate court erred in ruling the taped statements admissible regarding the June 27 offense. We note that the source of this error rests largely in the appellate court's reliance on *People v. Holloway* (1982), 92 Ill. 2d 381. *Holloway* involved double jeopardy provisions contained in section 3—4(b)(1) of the Criminal Code of 1961 (Ill. Rev. Stat. 1979, ch. 38, par. 3—4(b)(1)), and the court determined that the conviction being appealed was not so similar to an earlier dismissed charge that prosecution of the second charge was barred. Suffice it to say that the two standards are not wholly analogous; two offenses may be sufficiently similar that a sixth amendment right to counsel on one triggers a right to counsel on the other, and yet at the same time those two offenses may be sufficiently dissimilar that prosecution of one would not bar (under section 3—4(b)(1)) a later prosecution of the other.

Accordingly, we find that use of the tape-recorded statements of defendant to convict defendant of the June 27, 1984, burglary violated his sixth amendment right to counsel. Therefore, we reverse the appellate court decision, reverse defendant's conviction and remand for a new trial with respect to the alleged June 27 burglary, at which trial the disputed recorded statements are to be excluded.

*Appellate court reversed;*
*conviction reversed;*
*cause remanded.*