**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Jack Lee HIGGINS, Defendant–Appellant.**

**No. 92–4110.**

United States Court of Appeals,
Tenth Circuit.

Aug. 25, 1993.

he had not filed an individual income tax return in over twenty years. Two IRS agents arrived at Mr. Higgins' business in Salt Lake City, Utah, to discuss his tax returns. Mr. Higgins was told that the purpose of the IRS visit was to investigate his failure to file tax returns. After entering the office, Special Agent Crae Carpenter, following standard IRS procedure, read Mr. Higgins noncustodial *Miranda* rights. Mr. Higgins said that he understood his rights and wanted to call his attorney, James Barber. He spoke to Mr. Barber on a speakerphone. Mr. Higgins explained that IRS agents were in the office inquiring about his tax returns. The agents then introduced themselves to Mr. Barber. Special Agent Carpenter later reported that while the agents were present, Mr. Barber asked Mr. Higgins, "Jack, have you filed the returns?" Mr. Higgins responded, "Yes, except for last year." Rec., vol. V, at 349. Mr. Barber and the agents then arranged to meet the next day and the conversation ended.

In fact, Mr. Higgins had not filed a tax return since 1965. He was charged with three counts of tax evasion for the years 1985, 1986, and 1987.[1] The indictment specified that Mr. Higgins had engaged in a number of acts designed to mislead or conceal his correct income subject to taxation, including lying on a Collection Information Statement and in conversations with Special Agent Carpenter, and using a false social security number on the same information statement and on a currency transaction report. Mr. Higgins filed a motion for a bill of particulars requesting certain information, which the district court granted. The government did not produce a document labeled "bill of particulars," but it did provide access to IRS documents, notably Special Agent Carpenter's Report (SAR), under its open file policy.

Mr. Higgins was convicted on all three counts and sentenced to fourteen months imprisonment followed by one year of supervised release. The Sentencing Guidelines became effective November 1, 1987. The crimes committed in 1985 and 1986 thus were pre-guideline offenses. Instead of sentencing Mr. Higgins separately for the pre-guide-

Edwin F. Guyon, Salt Lake City, Utah, for defendant-appellant.

Gordon W. Campbell, Asst. U.S. Atty. (David J. Jordan, U.S. Atty., with him on the brief), Salt Lake City, Utah, for plaintiff-appellee.

Before LOGAN, SEYMOUR, and BALDOCK, Circuit Judges.

SEYMOUR, Circuit Judge.

Jack Lee Higgins appeals his convictions for tax evasion under 26 U.S.C. § 7201 (1988). He argues that the district court erred in denying his motion to suppress; that the government failed to comply with the district court's order to provide him with a bill of particulars; that the district court erred in denying his motion for a directed verdict; and that his sentence violates the United States Sentencing Guidelines. We affirm.

I.

The Internal Revenue Service (IRS) began investigating Mr. Higgins after learning that

---

1. The statute of limitations had run on the prior years.

line and post-guideline counts, the district court sentenced Mr. Higgins solely under the guidelines based on the total tax loss from the three tax years.

## II.

 Mr. Higgins first contends that the district court erred in denying his motion to suppress the statements he made in his office in the presence of the two IRS agents. The agents met Mr. Higgins at his office, explained why they were there, and then read the standard IRS warning given prior to interviewing a taxpayer under investigation. Mr. Higgins argues his Fifth Amendment rights were violated because he was not given the appropriate procedural safeguards for a custodial encounter, and that, even if he was, the statements he made were not voluntary.

 The magistrate judge who held the suppression hearing ruled that the encounter was noncustodial. The district court agreed. We must accept the district court's findings of fact unless they are clearly erroneous, viewing the evidence in a light most favorable to the district court's findings. *United States v. Gonzalez–Acosta,* 989 F.2d 384, 387 (10th Cir.1993).

The IRS agents met with Mr. Higgins at his office. The record reflects that they did not question Mr. Higgins regarding whether he had paid his taxes. Mr. Higgins' attorney, who knew the agents were present, elicited the incriminating response from Mr. Higgins. During oral argument, Mr. Higgins conceded that a custodial encounter had not occurred. *See Beckwith v. United States,* 425 U.S. 341, 96 S.Ct. 1612, 48 L.Ed.2d 1 (1976) (IRS agents meeting with taxpayer in his home held noncustodial). Since the encounter was noncustodial, *Miranda* and its progeny do not apply and no constitutional violation occurred. *See Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966).

## III.

 Mr. Higgins claims for the first time on appeal that the government's failure to provide him with a bill of particulars mandates reversal of his convictions. The government never conveyed a document labeled "bill of particulars" to Mr. Higgins. Without asserting that he failed to receive the information he requested, Mr. Higgins makes the technical argument that the government's failure to produce a formal "bill of particulars" mandates reversal.[2]

" 'The purpose of a bill of particulars is to inform the defendant of the charge against him with sufficient precision to allow him to prepare his defense, to minimize surprise at trial, and to enable him to plead double jeopardy in the event of a later prosecution for the same offense.' " *United States v. Dunn,* 841 F.2d 1026, 1029 (10th Cir.1988) (quoting *United States v. Cole,* 755 F.2d 748, 760 (11th Cir.1985)). *See also United States v. Sturmoski,* 971 F.2d 452, 460 (10th Cir.1992), *United States v. Gabriel,* 715 F.2d 1447, 1449 (10th Cir.1983); *United States v. Barbieri,* 614 F.2d 715, 719 (10th Cir.1980). We examine whether the failure of the government to furnish a bill of particulars caused Mr. Higgins to suffer prejudicial surprise at trial or impeded his ability to present his defense. *Dunn,* 841 F.2d at 1029; *see also Sturmoski,* 971 F.2d at 461.

The government maintains that the answer to every question asked by Mr. Higgins was supplied to him in advance of trial through Special Agent Carpenter's affidavit, the SAR, and through the IRS' open file policy. When the district court inquired of Mr. Higgins' attorney a few days before trial whether there was any problem with reciprocal discovery, he replied, "No there's not, your honor. I've spoken with [the government attorney], and he has been very helpful in open file policies." *Transcript of Pending Motions,* March 27, 1992, at 2–3. The government attorney then stated, "We've provided open file discovery to [Mr. Higgins' attorney], including our Special Agent's Report, which summarizes our theories of the case."

---

**2.** Mr. Higgins' complaint is virtually identical to a complaint that the trial court abused its discretion by initially denying defendant's motion for a bill of particulars. We therefore test his argument under the same standard.

*Id.* at 3.[3] Mr. Higgins did not then and does not now assert to the contrary. Moreover, during cross-examination of Special Agent Carpenter, Mr. Higgins' attorney asked the agent questions directly related to the SAR and at times quoted from the report. *See* rec., vol. IX, at 15–20.

Mr. Higgins does not complain that he did not receive the answers he requested, only that he did not receive something designated a "bill of particulars". The pertinent inquiry is whether Mr. Higgins was adequately informed of the charges against him. The eight questions asked of the government are summarized in Mr. Higgins' brief. Aplt. Br. at 5. The government provides citation to the document where the answer to each of these questions can be found. Aplee.Br. at 6–8. Mr. Higgins had access to these documents. He does not allege that he was surprised at trial or that he suffered prejudice as a result of not receiving a formal bill of particulars. Accordingly, we find no error.

### IV.

■ Mr. Higgins argues that the district court erred in denying his motion for a directed verdict. In reviewing the sufficiency of the evidence, we must view the record in the light most favorable to the government " 'to ascertain if there is sufficient substantial proof, direct and circumstantial, together with reasonable inferences to be drawn therefrom, from which a jury might find a defendant guilty beyond a reasonable doubt.' " *United States v. Johnson,* 971 F.2d 562, 565 (10th Cir.1992) (quoting *United States v. Sullivan,* 919 F.2d 1403, 1431 (10th Cir.1990)).

■ Mr. Higgins was convicted on three counts of violating 26 U.S.C. § 7201, which states: "Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall be ... guilty of a felony." The record amply supports the assertion by the government that Mr. Higgins had a tax due and owing. Testimony from Mr. Higgins' accountant, along with expert testimony from an IRS representative, showed that a tax was due for each of the three years in question in the following amounts: $11,124.54 for 1985, $12,566.63 for 1986, and $25,913.94 for 1987. The record also contains evidence of affirmative acts of evasion and willfulness. Mr. Higgins has not filed a tax return since 1965, he falsely declared to Special Agent Carpenter that he had filed taxes through 1987, and he used a false social security number when reporting to the IRS on an information statement and in a currency transaction report. The evidence is clearly sufficient to support the jury's verdict that Mr. Higgins is guilty of tax evasion beyond a reasonable doubt.

### V.

■ Finally, Mr. Higgins asserts that the sentence imposed by the district court violates the sentencing guidelines. We review the district court's legal conclusions regarding the application of the sentencing guidelines *de novo.* *United States v. Levy,* 992 F.2d 1081, 1083 (10th Cir.1993).

The conduct for which Mr. Higgins was convicted in Count III occurred after November 1, 1987, the effective date of the guidelines. The guideline for tax evasion directs that the basic offense level be calculated according to the "tax loss." U.S.S.G. § 2T1.1 In computing the tax loss on Count III, the district court added the losses for the years 1985, 1986, and 1987. Mr. Higgins contends that it was error for the district court to sentence him based on the amount of tax loss in the two years prior to 1987 because those acts predated the sentencing guidelines.

Paragraph three of the commentary to the tax evasion guideline provides that "all conduct violating the tax laws should be considered as part of the same course of conduct or common scheme or plan unless the evidence demonstrates that the conduct is clearly unrelated." U.S.S.G. § 2T1.1 comment (n. 3). Elsewhere, the guidelines provide that tax evasion counts should be grouped. U.S.S.G. § 3D1.2. We have recently held in a tax evasion case that even uncharged tax losses

**3.** We deny Mr. Higgins' motion to strike the government's supplemental record, which includes the SAR and the March 27, 1992 transcript of pending motions.

constitute relevant conduct which a sentencing court may consider in determining the basic offense level tax loss. *United States v. Meek*, 998 F.2d 776, 781 (10th Cir.1993).

In arriving at a base offense level in this case, which included the taxes due for all three years, the district court explained that Mr. Higgins would not be sentenced separately on the pre-guidelines offenses. Rec., vol. VII, at 18. In so doing, the court followed an advisory provided by the United States Sentencing Commission which states:

> Relevant conduct for offenses subject to the guidelines is to be determined without regard to the November 1 implementation date. If the relevant conduct for an offense committed on or after November 1, 1987, overlaps with conduct sanctioned as part of a pre-November 1 count, there would be a potential for double counting unless the pre-guideline counts were sentenced concurrently. The court will have to fashion the sentence carefully with these concerns in mind.

United States Sentencing Commission, *Most Frequently Asked Questions About the Sentencing Guidelines* at 42 (6th ed., Dec. 1992). Had the court chosen to sentence Mr. Higgins separately for the 1985 and 1986 offenses, his potential sentence would have been much greater. He could have received a five year sentence on each pre-guideline count, *see* 26 U.S.C. § 7201, rather than the fourteen month maximum he received under the guidelines. Mr. Higgins' sentence does not violate the guidelines.

Mr. Higgins' conviction is AFFIRMED.