**UNITED STATES of America, Plaintiff,**

v.

**William Arden OLSEN, Defendant.**

**No. 93–CR–52B.**

United States District Court,
D. Utah, C.D.

Nov. 24, 1993.

Mark K. Vincent, Asst. U.S. Atty., Salt Lake City, UT, for plaintiff.

Dierdre A. Gorman, Ogden, UT, for defendant.

## ORDER

BENSON, District Judge.

This matter was referred to Magistrate Judge Ronald N. Boyce pursuant to 28 U.S.C. section 636(b)(1)(B). On August 16, 1993, Magistrate Judge Boyce heard oral argument on defendant's motion to suppress. At that hearing, the Magistrate Judge requested supplemental briefing from the defendant and took the matter under advisement. The Magistrate Judge recommends that defendant's motion to suppress be denied. Although defendant filed an Objection to the Report and Recommendation, defendant did not raise any specific objections. In spite of the fact that defendant did not raise any specific objections, the court has made a *de novo* review of this matter.

After having reviewed the Magistrate Judge's Report and Recommendation, all other related documents of record, and relevant case law, the court finds that the Magistrate Judge was correct in his legal interpretation and factual conclusions. Based on this finding, defendant's objection is overruled, and the Report and Recommendation of the Magistrate Judge is accepted pursuant to 28 U.S.C. section 636(b)(1)(C). Accordingly, IT IS HEREBY ORDERED that the September 16, 1993, Report and Recommendation of the Magistrate Judge is adopted in its entirety. Defendant's motion to suppress is DENIED.

## REPORT AND RECOMMENDATION

BOYCE, United States Magistrate Judge.

Defendant, William Arden Olsen, has been indicted on one count charging him with being a convicted felon in possession of a firearm (18 U.S.C. §§ 922(g) and 924(a)(2)). The defendant filed a motion to suppress a statement made by defendant as being obtained in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) and the Sixth Amendment to the United States Constitution (File Entry 13).

The case has been referred to the magistrate judge under 28 U.S.C. § 636(b)(1)(B). This report and recommendation is submitted pursuant to the reference on defendant's motion to suppress his statement.

The defendant filed a memorandum in support of the motion to suppress (File Entry 26). In the memorandum, the defendant states that defendant was arrested by Moab City, Utah police for public intoxication and possession of a dangerous weapon by a restricted person in violation of Utah law. See Utah Code Ann. § 76–10–503. At the time defendant was on probation after conviction in a Utah court of a third degree felony, burglary (File Entry 26). The defendant was arraigned in state court on an information on January 7, 1993 and after he requested counsel, attorney Sandra Starley was appointed on January 13, 1993 to represent defendant. The case was set for a preliminary hearing and for a probation violation hearing. These were separate proceedings.

Subsequently, on February 18, 1993 the defendant was contacted at his home by his probation officer, Wendell Thayne, and special agent Ray Boland of the Federal Bureau of Alcohol, Tobacco, and Firearms (BATF). The defendant was interrogated by Agent Boland about the incident which gave rise to the pending state and subsequent federal charge. The indictment charges the defendant with the possession of a firearm and a having occurred on January 5, 1993 (File Entry 1). The state arrest was the same event (see "Information" attachment to defendant's memorandum, File Entry 26).

Hearing was held before the magistrate judge on defendant's motion to suppress August 16, 1993 (Tr.). The transcript was received August 25, 1993. The above statements of facts is taken from the defendant's memorandum.

At the hearing it was also represented and accepted that at the time of defendant's interrogation no *Miranda* warning was given. The defendant was not in jail or police custody but was at his home (Tr. pp. 4–5). The defendant also asserted that the motion to

suppress included a voluntariness claim (Tr. p. 5).

Special Agent Robert F. Boland, BATF, testified at the hearing (Tr. p. 6). Boland received information that defendant was involved in an incident when he was in the possession of a firearm (Tr. p. 7). The information came from Wendell Thayne, a probation officer with the Utah Department of Corrections (UDC) (*Id.*). Boland was advised that defendant was a restricted person, having been convicted of a felony. The defendant was facing a state felony charge of being a restricted person in possession of a firearm. Boland was aware that state court proceedings had commenced (Tr. pp. 7–8).

On February 18, 1993, Boland went to defendant's home in Moab, Utah. Agent Thayne accompanied Boland. They arrived at the home at about 9:00 a.m. They knocked on the door and were greeted by defendant. They asked if they could come in, and defendant invited them inside (Tr. p. 9). Thayne introduce Boland to defendant Olsen. Thayne asked if Olsen would be willing to speak about the incident on January 5, 1993. Olsen said he would be willing to talk. Olsen was extremely cooperative. The conversation took place in the front room of defendant's residence. Thayne was seated on a couch and Boland was leaning against a railing. Olsen was seated opposite Boland on a couch (Tr. p. 10). Boland asked the defendant if he had an attorney and the defendant said no, but was looking for one. Defendant was then questioned about the incident.

Boland was first contacted by Thayne sometime after January 5th and prior to February 18, 1993. Boland did not know Thayne before. Thayne's purpose was to advise Boland of a potential federal firearms violation (Tr. p. 11). Thayne did not give any details because the matter was a Moab City Police Department case (Tr. p. 11). Boland got copies of reports from the Moab City police. Boland contacted the United States Attorney's office and was advised to attempt to interview Olsen (Tr. p. 12). The police reports did not have all the information that was needed.

Boland went to Moab and he and Thayne went to the defendant's home (Tr. p. 13). Thayne went along because he knew where defendant lived and he was willing to be a witness to Boland's interview of the defendant. Boland believed it was a good policy to have a witness present. No tape recording was made of the statement (Tr. p. 14). Boland was aware of the state proceedings (Tr. p. 14). No discussion was ever had with the state prosecutor about converting the prosecution into a federal prosecution. No *Miranda* warning was given. Boland did ask if defendant had an attorney (Tr. pp. 15–16) and defendant said no he was looking for one. Defendant told Boland that defendant was unhappy with the Moab public defender's office (Tr. p. 16). Boland did not know at what stage of the proceedings the state prosecution was at (Tr. p. 17). Exhibits 1 and 2 were received, which are the docket sheets from the Seventh District court in Moab. Exhibit I indicates the original charge and arraignment was on January 7, 1993. Bond was eventually posted by Olsen. At arraignment on January 13, 1993, attorney Sandra Starley was appointed to represent the defendant. Exhibit 2 reflects that on January 20, 1993 at a court hearing the case was continued. Defendant said he wanted to hire his own counsel. Sandra Starley continued to represent defendant (See affidavit of Starley). On February 24, 1993 defendant pled guilty to Count I of the state charge of possession of a dangerous weapon; (Utah Code Ann. § 76–10–503) Count II was dismissed. Defendant was ordered to undergo a ninety (90) day evaluation on his probation violation. The state probation violation charge was eventually dismissed.

Defendant was arrested on January 5, 1993 and charged in state court. Eventually defendant received court appointed counsel, counsel contacted the defendant by telephone (Tr. p. 23). At one point defendant said he wanted to hire his own attorney and attorney Starley said she would continue looking into the matter until defendant did find other counsel. Defendant did not find other counsel so Starley remained defendant's counsel. From January 20, 1993 to the time Boland came to defendant's house, defendant told

Starley he had not found other counsel (Tr. p. 24).

Defendant testified that Agent Thayne and BATF Agent Boland came to defendant's home in February, 1993. Thayne said that the BATF agent wanted to ask a few questions to see if there was any federal offense Olsen had committed (Tr. p. 25). Thayne said it was "no big deal." At the time Olsen was charged in state court with possession of a firearm and an intoxication charge. There was also an outstanding probation action pending. Defendant understood the ultimate determination of his sentence would be made by the judge (Id.). Defendant made the determination to talk because he knew that ninety-nine percent of the time the judge follows the recommendation of the probation officer (Tr. pp. 25–26) and he had been told to be on his best behavior. Thayne had told defendant he would go to prison for sixty to ninety days, apparently for the sentencing evaluation (Tr. pp. 26–27). Defendant thought by cooperating he could improve his relationship (Tr. p. 27). Thayne had been present in state court on one occasion at the time of questioning, defendant did not recall either of the officers asking about an attorney. The state charge of possession of a weapon was dropped on March 31, 1993 (Tr. p. 28, Ex. B. to def. memorandum, File Entry 26).

At the time defendant was questioned he told Boland he was looking for another attorney (Tr. p. 29). The defendant never did hire another attorney. He wasn't sure he was going to hire an attorney or not (Tr. pp. 30–31). At the time of interrogation, Thayne did not tell defendant he had to cooperate (Id.), or that Thayne would make an unfavorable recommendation (Tr. p. 32). There were no hostilities during the interrogation and the session was cordial. The officers were polite (Id.).

Wendell Thayne testified (Tr. p. 33). He is a probation officer with the Utah Department of Corrections (UDC) and defendant was a probationer. When defendant was arrested on January 5, 1993, he was on probation. Thayne filed an affidavit for a probation violation after the defendant's arrest (Tr. pp. 34–35). Thayne was in court when defen-

dant requested counsel. Thayne contacted BATF on January 6, 1993 because of the firearm incident. Thayne went with Boland to defendant's residence when Boland came to Moab (Tr. p. 36). Thayne went with Boland because Thayne knew defendant and knew where he lived. Also Boland wanted a witness. Thayne was also there as defendant's probation officer. The information gathered could be used on the probation violation (Tr. p. 37). Thayne was present for both of the BATF agent's purposes (Id.). Defendant appeared to be on his best behavior; he was cordial. There was no animosity. He had told defendant at some prior point, there was a possibility he would go to prison (Id.). Defendant knew Thayne had the power to recommend defendant go to prison (Tr. p. 39). No Miranda warning was given (Id.). Nothing was said about federal prison. At the time of the conversation, Thayne knew defendant had requested counsel from the court and Thayne was aware defendant had contact with an attorney (Tr. pp. 39–40). Thayne believed defendant had requested a change of attorney and did not have an attorney at the time. Thayne had been present at the state probation violation/order to show cause hearing where the subject of defendant's attorney came up (Tr. p. 40). Sandra Starley was present as defendant's counsel at the hearing but Thayne did not think Starley was defendant's counsel (Tr. p. 41). Thayne did not know if defendant was represented by counsel on the other criminal charges (Tr. p. 42). Defendant's probation conditions contained a no firearms clause (Tr. p. 43).

When Thayne talked to Boland, he asked if defendant had an attorney (Tr. p. 43). Thayne told Boland that Thayne did not believe defendant had an attorney (Tr. p. 44). At the defendant's house, he said he was looking for an attorney and that defendant did not want the public defender (Id.). Thayne never told defendant at the time of the interrogation that it was "no big deal" (Tr. pp. 45–46). Defendant was not threatened at that time with incarceration at the prison. Thayne initially contacted Boland to see if there was a violation of federal law.

The defendant underwent a 90 day sentencing evaluation at the Utah State Prison

(USP) on his probation violation. When he returned it was expected he would go to prison. Defendant's counsel negotiated a deal whereby the state probation charge was dropped and the federal charge would go forward (Tr. p. 51).

Based on the above evidence the court enters the following:

### Findings of Fact

1. The defendant William Arden Olsen was on probation for the conviction of a felony in the State of Utah. His probation officer was Agent Wendell Thayne of the Utah Department of Corrections (UDC). On or about January 6, 1993 the defendant Olsen was arrested in Moab, Utah for possession of a dangerous weapon by a restricted person, and public intoxication Utah Code Ann. § 76–10–503. Defendant was charged with a felony under Utah law for the possession of the weapon and with a misdemeanor for the public intoxication. Utah Code Ann. § 76–9–701. An independent action to revoke the defendant's probation on his prior felony conviction was also undertaken in a separate proceeding.

2. Defendant appeared in a Utah Court and on January 13, 1993 public defender Sandra Starley was appointed to represent defendant on the criminal charges and probation revocation proceedings. The prosecution was set for further proceedings. Thereafter, defendant Olsen became dissatisfied with the representation by Starley and at a court hearing on January 20, 1993, defendant Olsen advised the court that he wished to hire his own attorney. However, Starley was not discharged by the court and Starley did advise Olsen that Starley would continue to represent Olsen until he obtained new counsel. Defendant Olsen never did obtain new counsel, and Starley continued to represent Olsen on the new charges and the probation violation action. Agent Thayne did not attend court proceedings on the new criminal charges, but did attend the proceedings on the probation revocation action. Thayne did not have any connection with the new criminal charges which were apparently pursued by Moab City police and the Grand County Attorney.

3. Immediately after defendant Olsen's arrest on January 6, 1993, Agent Thayne contacted the United States Bureau of Alcohol, Tobacco and Firearms (BATF) in Salt Lake City. Thayne made inquiry as to whether the circumstances could be a possible violation of federal law and provided Special Agent Robert F. Boland of the BATF with the defendant Olsen's name and the circumstances. On February 18, 1993, Boland went to defendant Olsen's home in Moab, Utah. Agent Thayne accompanied Boland because Thayne knew Olsen, knew where Olsen lived and Boland wanted a witness as to what transpired. Thayne also was interested in what defendant might say as it would bear on the defendant's probation status.

4. When Thayne and Boland arrived at Olsen's home he invited the two officers into his home. Boland asked defendant if he had an attorney. Defendant said he was unhappy with the public defender, and did not have an attorney, but was looking for one. The statement was only partially true because attorney Starley still represented defendant Olsen on the state criminal charges and the pending probation revocation proceedings. Thayne introduced Boland to defendant Olsen. No *Miranda* warning was given. Boland questioned Olsen about the incident of January 6, 1993. Boland did not threaten Olsen, make him any promise or state that the matter was "no big deal." The questioning took place in the living room area of the home. One officer sat on a couch. Defendant Olsen sat on another couch and Boland leaned against a railing. Olsen was never told by Thayne that he had to speak or be cooperative. The defendant was not in custody. Olsen knew that he was probably going to a UDC facility for a ninety day evaluation under Utah law and he believed Thayne would make a recommendation to the judge on the disposition of Olsen's probation and he determined it was in his best interest to be cooperative. Olsen voluntarily made an inculpatory statement about the January 6, 1993 incident. At the time no federal charge was pending and no threats or intimidation were involved. Defendant Olsen was very cooperative. Olsen was not intimidated and

voluntarily elected to make a statement. The questioning was by Boland. After the defendant made a statement, Boland and Thayne left.

5. On February 24, 1993 defendant pleaded guilty to public intoxication and the state weapons charge was dismissed. Thereafter, and after a ninety day evaluation of defendant under Utah law, the probation revocation proceedings were dropped. Apparently, in anticipation of this prosecution. On March 17, 1993, Olsen was indicted by a grand jury on the federal charge in this case.

6. At the time that defendant Olsen was questioned by Agent Boland he was not seeking evidence to aid state authorities or for use in a state prosecution. There was no cooperative arrangement with state prosecution authorities. Boland had had no contact with the local police as to any new state charge and was not working cooperatively with state authorities in any joint investigation or prosecution. Boland had Thayne go with Boland to Olsen's premises to show Boland where Olsen lived, to introduce Boland and to have Thayne witness what occurred. Thayne was not serving any federal interest by his presence, except as a witness and to facilitate Boland's contact with defendant. Thayne was interested in what defendant said, not to further a federal prosecution or the state prosecution, but in relation to the probation revocation matter. There was no joint investigative relationship to obtain a statement from defendant for use in a federal prosecution. The questioning of defendant was by Boland and solely for the purposes of determining if a violation of federal law occurred.

### Discussion

### Need For Miranda Warning

Defendant contends in his motion to suppress that the failure to properly advice him as to his rights before any questioning on February 18, 1993 requires the exclusion of his statements. The claim is that defendant was entitled to a *Miranda* warning before questioning.

*Miranda*

■ In order for the *Miranda* warning to be required, the defendant must have been subjected to custodial interrogation. If the defendant was not in custody the *Miranda* warning was not required before interrogation; *Miranda v. Arizona,* supra n. 4; *United States v. Higgins,* 2 F.3d 1094 (10th Cir. 1993). In *Berkemer v. McCarty,* 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984) and *Pennsylvania v. Bruder,* 488 U.S. 9, 109 S.Ct. 205, 102 L.Ed.2d 172 (1988), the Supreme Court held a forced stop of a vehicle for a traffic violation, although a seizure under the Fourth Amendment, was non-custodial for *Miranda* purposes: "The comparative non-threatening character of detentions of the sort explains the absence of any suggestion in our opinions that *Terry* stops are subject to the dictates of *Miranda.*" *Accord: Cordoba v. Hanrahan,* 910 F.2d 691 (10th Cir.1990). The court in *Berkemer* went on to say that *Miranda* applied to an arrest or when a suspect's "freedom of action is curtailed to a degree associated with formal arrest." The circumstances of defendant's interview with Agent Boland did not meet the custodial level of *Miranda.*

In *Beckwith v. United States,* 425 U.S. 341, 96 S.Ct. 1612, 48 L.Ed.2d 1 (1976), IRS criminal investigation agents confronted and interrogated defendant in a private home where he had been staying. Even though the investigation had focused on the defendant, the Supreme Court rejected that as a basis for finding custody and held there was no custody and no *Miranda* warning was required. Consider also *Oregon v. Mathiason,* 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977); *California v. Beheler,* 463 U.S. 1121, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983) (interrogation at police station held non-custodial); *Minnesota v. Murphy,* 465 U.S. 420, 104 S.Ct. 1136, 79 L.Ed.2d 409 (1984) (interrogation in probation office held non-custodial); *United States v. Higgins,* supra (business office not custodial).

■ The question of custody is to be determined by objective standards. *Orozco v. Texas,* 394 U.S. 324, 89 S.Ct. 1095, 22

L.Ed.2d 311 (1969).[1] Applying these standards, courts have found custody not to be involved in an interrogation of suspect, not under arrest, at an FBI office, *United States v. Jorgensen*, 871 F.2d 725, 729 (8th Cir. 1989); *United States v. Chenault*, 844 F.2d 1124 (5th Cir.1988) (at defendant's office); *United States v. Chalan*, 812 F.2d 1302, 1305–07 (10th Cir.) *cert. denied* 488 U.S. 983, 109 S.Ct. 534, 102 L.Ed.2d 565 (1988) (at an Indian Pueblo Governor's office); *United States v. Ellison*, 791 F.2d 821 (10th Cir. 1986) (an interview in a United States Attorney's Office); *United States v. Leach*, 749 F.2d 592 (10th Cir.1984) (at an FBI office); *United States v. Friedrick*, 842 F.2d 382 (D.C.Cir.1988) (at the FBI office of an agent undergoing internal investigation); *United States v. Dockery*, 736 F.2d 1232 (8th Cir. 1984) (at an employee's bank office); *United States v. Venerable*, 807 F.2d 745 (8th Cir. 1986) (at defendant's business). A warning was not required at a presentence interview in *United States v. Rogers*, 899 F.2d 917 (10th Cir.1990). Recently, in *United States v. Higgins*, supra, the Tenth Circuit held that questioning at a suspect's office was non-custodial.

■ The defendant was not subjected to custodial interrogation. Therefore, no warning was required to be given to him and the defendant's statement is not subject to exclusion for failure to advise him of his rights as provided for in *Miranda v. Arizona*, supra.[2]

There is no merit to defendant's claim of a violation of his Miranda rights. Therefore, the defendant's motion to suppress based on a claim of violation of *Miranda* should be denied.

*Sixth Amendment*

The defendant contends that since he was under charges in a Utah state court and counsel had been appointed for him, the questioning of him without the presence of counsel violated his Sixth Amendment right to counsel. Defendant observes the state charge pending against him arose from the same episode as the subsequent federal charge. Defendant also contends the presence of defendant's probation officer, Wendell Thayne, made the interrogation a joint federal/state operation and requires the exclusion of the confession.

■ The defendant's right to counsel under the Sixth Amendment attached when formal charges were brought against him. *Massiah v. United States*, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964); *McLeod v. Ohio*, 378 U.S. 582, 84 S.Ct. 1922, 12 L.Ed.2d 1037 (1964); *Brewer v. Williams*, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977). The defendant had been arraigned on the state weapon charge and counsel appointed for him. Therefore, there is no question that defendant's right to counsel had attached regarding the state charges. *Michigan v. Jackson*, 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986). However, the defendant had no Sixth Amendment right to counsel as to the pending state probation revocation proceeding. *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973).[3]

■ The Sixth Amendment right to counsel in post charge interrogation is, however, offense or charge specific. *Maine v. Moulton*, 474 U.S. 159, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985); *McNeil v. Wisconsin*, 501 U.S. 171, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991). *See also Moran v. Burbine*, 475 U.S. 412, 431, 106 S.Ct. 1135, 1146, 89 L.Ed.2d 410 (1986). Where no charges have been filed, the Sixth Amendment does not apply. *Illinois v. Perkins*, 496 U.S. 292, 110 S.Ct. 2394, 110 L.Ed.2d 243 (1990). *See also United States v. Mitcheltree*, 940 F.2d 1329 (10th Cir.1991).

---

1. The actual standard of application of *Orozco* has been eroded by subsequent cases. Nissman, Hagen & Brooks, Law of Confessions 4.7 (1985).

2. The defendant was not subjected to the functional equivalent of arrest and no custodial interrogation occurred. See discussion in *United States v. Masse*, 816 F.2d 805 (1st Cir.1987).

3. Defendant had a right to counsel under Utah law at the probation revocation proceedings, Utah Code Ann. § 77–18–1(9)(c); *State v. Eichler*, 25 Utah 2nd 421, 483 P.2d 887 (1971). However, this does not implicate a federal constitutional right. *Gagnon v. Scarpelli*, supra. There is no federal Sixth Amendment right to counsel at a probation revocation proceeding. *Id.*

■ In this case, Agent Ray Boland ATF was not interested in questioning defendant about the pending state charge, but as to whether any federal offense had occurred.[4] Boland did not have any contact with officers of the Moab City police or receive any information from them. Boland was not operating in cooperation with the state police or attempting to obtain information from defendant to pass on to the state officers. His actions were only to determine if a federal violation had occurred. There is no evidence to support a finding of mutual cooperation as to the pending state criminal information against defendant. There was no state/federal working arrangement. See *Anderson v. United States*, 318 U.S. 350, 63 S.Ct. 599, 87 L.Ed. 829 (1943); *United States v. McCormick*, 468 F.2d 68 (10th Cir.1972); *United States v. Rose*, 541 F.2d 750, 757–58 (8th Cir.1976). More than a bare suspicion is required to show the necessary relationship. *United States v. Torres*, 663 F.2d 1019, 1020 (10th Cir.1981). There is no showing of any exchange of information or any effort on the part of Boland to promote a state interest. Pursuit of the independent federal interest was a legitimate effort for Boland.

In *McNeil v. Wisconsin*, supra, the court said the Sixth Amendment right to counsel is "offense specific" and "It cannot be invoked once for all future prosecution; it does not attach until a prosecution is *commenced* ..." — U.S. at —, 111 S.Ct. at 2207, (Emphasis Added) Statements made as to other crimes to which the right to counsel has not attached are admissible. *Id.; Maine v. Moulton*, supra. To allow Olsen's state right to counsel to spillover and insulate him from questioning by federal officers would frustrate the federal interest in enforcement of federal violations. This case is different from *United States v. Mitcheltree*, supra, since in that case only federal agents were involved and the questioning was directed to the offense with which the subject was

charged, as well as the new inquiry. The matters were intertwined. In this case, the inquiry was solely to the federal charge. There was nothing derivative of any illegality because there was no primary illegality. *Mitcheltree* is not applicable to this fact situation.

The presence of defendant's probation officer, Wendell Thayne, does not change the relationship. Defendant had no Sixth Amendment right to counsel in regard to his pending probation action. He could be protected by his own invention of the privilege against self-incrimination, *Minnesota v. Murphy*, 465 U.S. 420, 104 S.Ct. 1136, 79 L.Ed.2d 409 (1984), which defendant did not exercise. Further, the federal officer was not attempting to get evidence on *any* pending state matter. Thayne could have interrogated defendant without effecting any Sixth Amendment interest because Olsen had no Sixth Amendment right to counsel as to the probation proceedings. *Gagnon*, supra.

In *United States v. Ryans*, 903 F.2d 731 (10th Cir.1990), the court held that the government's use of an informer to obtain information from a defendant represented by counsel was proper. The defendant sought suppression of taped interviews because counsel was not present and no charges were pending at the time. The court held the evidence was not excludable under Disciplinary Rule (DR) 7–104(A)(1) because no charge was pending. The court said DR7–104(A)(1) could apply to police if they were acting as the "alter ego" of the prosecuting attorney.[5] *Id.* at 735. There is no evidence in this case that Agent Boland was acting as the alter ego of the prosecution, either state or federal. The defendant in this case expressly told Boland that the defendant did not have an attorney. The interrogation in *Ryans* was not custodial. *Id.* at 736. The federal advisory process had not begun. The court said the DR was "not intended to preclude undercover investigations of unindicted suspects

---

4. Agent Boland did not believe the state dangerous weapons charge involved the same elements as the federal statute. He is correct. Utah Code Ann. § 76–10–503 does involve the same elements as 18 U.S.C. § 922(g). However, the evidence is as to the same incident.

5. The function that Boland was performing was a federal investigative function, not a prosecutorial function. *Id.* at p. 739. See also, statement in Government's Response, Sept. 10, 1993. The United States Attorney had screened the case and asked for added information. However, the AUSA knew nothing of the state charges.

merely because they retained counsel." *Id.* at 739. The defendant's Sixth Amendment rights had not attached *Id.* at 740. Although, in this case, the defendant's Sixth Amendment rights had attached as to the state charges, they had not attached to any federal charges and no state police or state prosecutors were involved. No evidence to the contrary is a matter of record.

Certainly the defendants right to counsel had attached to his state criminal charges. In *Patterson v. Illinois,* 487 U.S. 285, 108 S.Ct. 2389, 101 L.Ed.2d 261 (1988) the court held if the defendant has been indicted but counsel had not been retained or been appointed, then police may approach and interrogate the suspect with a proper warning of his *Miranda* rights if defendant is in custody. However, where counsel has been engaged the standards of *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981) apply to any waiver of counsel. *Michigan v. Jackson,* supra. *Powell v. Texas,* 492 U.S. 680, 109 S.Ct. 3146, 106 L.Ed.2d 551 (1989). Here there was no waiver adequate for *Edwards'* standards. *Patterson v. Illinois,* is not applicable because the state case had proceeded beyond mere formal charges to where counsel was actually engaged.[6]

However, actually none of the cited cases from the Supreme Court is controlling. This case is governed by *Maine v. Moulton,* supra.[7] Here no federal charge was pending and a federal officer was looking at a future federal prosecution. There is no evidence of any cooperation between the federal officer and any state officer to whom the limitations of the Sixth Amendment applied. It did not apply to agent Thayne *Gagnon v. Scarpelli,* supra; *Minnesota v. Murphy,* supra; *United States v. Rogers,* 921 F.2d 975 (10th Cir. 1990). Consequently, defendant's claim of a constitutional violation must be dependent on showing an impermissible interrelationship between the federal officer and state authori-

ties that would show a wrongful exploitation of offense specific boundary set in *Maine v. Moulton.* See also *United States v. Mitcheltree,* supra.

The defendant places strong reliance on *United States v. Martinez,* 972 F.2d 1100 (9th Cir.1992) and *United States v. Hines,* 963 F.2d 255 (9th Cir.1992). In *Hines,* a federal agent approached a defendant at his house. The defendant was represented by counsel on pending state charges arising in part from the same incident the federal officer wished to question defendant about. The trial judge suppressed the defendant's statement given at a second interview by the agent after the first interview. The federal agent had contacted defendant's counsel before the interview but counsel was not present. The defendant's statement was given after a *Miranda* warning and applied only to a time not involved in the state charges. However, the government joined the same incident in the federal indictment as was involved in the state charge. Hines claimed a *Miranda* violation which the Court of Appeals rejected. He also claimed a violation of the Sixth Amendment right to counsel. The court said the Sixth Amendment did not apply to the second interview which involved an activity for which defendant had not been indicted. The court found the activity was not "inextricably intertwined" with the other charge and reversed the suppression. The court said there was no evidence the state or federal government circumvented the right to counsel. There was no evidence of collusion even when the federal government joined both events in a subsequent federal charge. The court cited to *United States v. Mitcheltree,* supra. The *Hines* case is inapplicable to this case because the court did not consider whether the investigation of a federal charge was related to a state charge to require Sixth Amendment protection or whether without state police involvement or cooperation the federal interrogation would

6. The government has not addressed or developed a claim of waiver or estoppel based on defendant's statement to Boland that defendant did not have an attorney. This issue will not be considered.

7. The case presents only a Sixth Amendment question. If counsel had been invoked by defen-

dant in a *Miranda* context then the complete protection of *Miranda* would extend to questioning about a different crime. *Arizona v. Roberson,* 486 U.S. 675, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988). That situation is not involved in this case.

not require Sixth Amendment protection. The Sixth Amendment right is a post charge right. To extend it to cover an independent investigation by federal officers of an incident involving state charges would significantly impede federal interests and invite frustration of legitimate federal policies. It must be kept in mind the Sixth Amendment is specific to charges involved. No federal charge was involved here at the time of interrogation. Of course, if there is collusion and interchange of information or a joint investigation, then functionally the federal officer is involved in exploiting the information in the state case and exclusion is arguably required. *Mitcheltree,* supra. *Hines* actually supports the government's position in this case, because the court allowed use of the evidence obtained by the federal investigator in the federal trial on both the new incident and the one that was the subject of a state charge at the time of the interrogation.

In *United States v. Cooper,* 949 F.2d 737 (5th Cir.1991) the court held the application of Sixth Amendment rights to state charges did not require suppression of a statement to a federal officer in anticipation of a federal prosecution. The defendant was charged in state court with aggravated robbery and interrogated about a federal weapons charge. The court quoted from *Maine v. Moulton,* supra, 474 U.S. at 180, 106 S.Ct. at 489:

> The Supreme Court made clear that police may investigate crimes to which the Sixth Amendment had not yet attached, declaring that "to exclude evidence pertaining to charges as to which the Sixth Amendment right to counsel had not attached at the time the evidence was obtained, simply because other charges were pending at that time, would unnecessarily frustrate the public's interest in the investigation of criminal activities. (Emphasis Added)

949 F.2d p. 743.

The Cooper court did note some courts have applied a "closely related" charge analysis [8] but the court concluded in *Cooper* the evidence was not the fruit of the poisonous tree. 949 F.2d 744 citing *Mitcheltree,* supra. The Sixth Amendment counsel right should not be confused with the broad prophylactic of the *Miranda* warning. *Arizona v. Roberson,* supra. The state charge and the federal charge are not the same, but, moreover involve different sovereign interests and in this case, different elements of proof.[9]

*United States v. Martinez,* 972 F.2d 1100 (9th Cir.1992) involved defendant's request for an attorney at arraignment which triggered his Sixth Amendment right to counsel *Michigan v. Jackson, supra.* The court said the issue of a Sixth Amendment violation by a subsequent federal interrogation after the state charges were dismissed depended on the extent of coordination between state and federal authorities. The state and federal charges arose under "identical conduct." The court candidly admitted the decisions of the Supreme Court offered "no definitive signals," *Id.* at 1103, on the extent of Sixth Amendment application from a state charge to a federal interrogation. The court said:

> It is true, as the United States notes, that *McNeil* states that *Jackson's* effect is "offense-specific," *McNeil,* 501 U.S. at ——, 111 S.Ct. at 2207, and that this phrase could reasonably be interpreted as limiting Martinez's Sixth Amendment protection to the state firearms offense. It is also true, however, that *McNeil* relied on *Moulton,* which in turn focused on the existence of " 'new or additional crimes.' " *McNeil,* 501 U.S. at ——, 111 S.Ct. at 2207 (quoting *Moulton,* 474 U.S. at 179, 106 S.Ct. at 489). This language could reasonably be read as suggesting that *Jackson*

**8.** Citing *People v. Clankie,* 124 Ill.2d 456, 125 Ill.Dec. 290, 530 N.E.2d 448 (1988). However, *Clankie* did not involve a second interrogation by an officer of a different sovereign. It was not a state/federal case. Issues of federalism and dual sovereignty were not involved. They are paramount in this case.

**9.** The state charge, Utah Code Ann. § 76–10–503, requires the prior conviction be for a crime of violence or that at the time of the new weapons offense that the defendant have been on probation or parole. 18 U.S.C. § 922(g) does not require anything other than that the defendant have been previously convicted of a felony, however, the weapon must have effected interstate commerce. Also § 922(g) could apply to other persons than convicted felons.

does apply to Martinez, because the federal questioning concerned no new or additional crime of Martinez.

972 F.2d at 1103.

The court referred to *Hines* but found it different. *Martinez* dealt with the situation where the state charges had been dismissed. To apply the Sixth Amendment to such circumstances the *Martinez* court said runs counter to the reasoning of *Moulton* and *McNeil*, which stressed both the "narrow application of the Sixth Amendment right to counsel and the importance of allowing police to initiate and pursue investigations." *Id.* at 1105. The court in *Martinez* felt that if collusion was present and the relationship of state and federal officer intertwined, then the Sixth Amendment may provide the accused with protection and suppression of the fruits of the federal interrogation may be required. *Id.* The case was remanded to develop the record on the interrelationship, if any. It should be noted that the court did not resolve the first issue, asserted by the Government, as to whether the Sixth Amendment was charge specific and therefore whether an independent federal interrogation should be unaffected by a state charge to which the Sixth Amendment had attached. However, by implication the court seemed to recognize the federal interest as independent because the remand was to develop the record on collision.

Further, *Martinez* does not suggest any justification for a difference based on pending state charges and federal interrogation followed by dismissal of the state charges, except as such facts may be pertinent to the length or range of the Sixth Amendment protection. *Martinez* and *Hines* are troubling because of the lack of clarity in which the federal interrogation interest is left. However, one principle that seems to be a constant and reasonable theme in the cases, going back to *Anderson*, supra, is that if there is collision between state and federal officers, then the subsequent use of the evidence in federal court, where the evidence would be excluded in a state court applying federal law, is improper.

The Supreme Court has "repeatedly emphasized the virtues of a bright-line rule" in interrogation cases. *Michigan v. Jackson*, 475 U.S. at 634, 106 S.Ct. at 1410; *Smith v. Illinois*, 469 U.S. 91, 98, 105 S.Ct. 490, 494, 83 L.Ed.2d 488 (1984); *Solem v. Stumes*, 465 U.S. 638, 646, 104 S.Ct. 1338, 1343, 79 L.Ed.2d 579 (1984); *Oregon v. Bradshaw*, 462 U.S. 1039, 1044, 103 S.Ct. 2830, 2834, 77 L.Ed.2d 405 (1983); *Fare v. Michael C.*, 442 U.S. 707, 718, 99 S.Ct. 2560, 2568, 61 L.Ed.2d 197 (1979); *Arizona v. Roberson*, 486 U.S. at 681, 108 S.Ct. at 2097; *Minnick v. Mississippi*, 498 U.S. 146, 151, 111 S.Ct. 486, 490, 112 L.Ed.2d 489 (1990). Police officers need better guidelines not academic euhemerism disguised in constitutional terms. Some features of the Sixth Amendment right to counsel in an interrogation setting involving state and federal interests are hardly bright line. i.e. *Hines, Cooper, Martinez*, supra. The "inextricably intertwined" concept does not give a bright line to officers as to what they can do or must avoid where a separate federal crime is involved. e.g. *United States v. Ryans*, supra.

A "separate investigation" rule is a legitimate accommodation of state and federal interests. In its absence, there is the potential for an uncomfortable race to charge, which will be won, in most instances by the state with the result being that federal interests are subordinated and frustrated. In addition, an avenue for corruption is opened up. By charging a state violation the federal investigation may be blocked or at least frustrated as far as interrogation is involved. This hampers important civil rights investigations, those involving organized crime and corruption, and could frustrate federal enforcement policy in some areas such as weapons policy.

In *Arizona v. Roberson*, supra, commenting on *Massiah v. United States*, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964), the court said "we recognized, though, that the continuing investigation of *uncharged offenses* did not violate the defendant's Sixth Amendment right to the assistance of counsel." 486 U.S. at 685, 108 S.Ct. at 2100 (emphasis added). *Miranda* and the privilege against self-incrimination provide adequate protection where a different sovereign seeks information as to a charge that may be

brought under its laws in the future. However, here again, an attempt should be avoided to draw too much from the Supreme Court's language. As the court observed in *Martinez,* the Supreme Court's language is susceptible to varying inferences. The appropriate conclusion is that the issue in this case is unresolved by any decision from the Supreme Court or the circuits. Analogy and inference do not provide clear direction, except where there is a joint federal/state enterprise or collusion.

Therefore, in resolving the very legitimate arguments advance by defendant and the government, if coercion and an ongoing singular cooperative state/federal effort is present, the second interrogation will not meet the "due regard for the government's obligation not to defeat Sixth amendment rights which have attached," the concern voiced in *Mitcheltree, supra.*

In this case, the requisite collusion or cooperation is not present: (1) There is no evidence in this case of an actual cooperative investigative relationship between federal and state prosecution officers. (2) State prosecution officials were not given any evidence from the federal interrogation. (3) All state charges on the weapon charge were dropped or resolved independently of any federal interest. No discussion between federal and state officers occurred about dropping the state charge for a federal prosecution. There is some evidence that defendant's counsel negotiated the situation, however, no evidence of collusion has been presented. The state settled for keeping defendant on probation following a 90 day evaluation and the revocation proceeding was not withdrawn until after federal charges were brought. This was at defendant's urging. (4) The only state officer involved was not a prosecutor or police officer, but a probation officer whose only interest was possibly a probation revocation to which no federal Sixth Amendment right applied. *Gagnon,* supra. The federal officer wanted the state probation officer to be present only as a witness. (5) Defendant has not shown prejudice as to his state charges as to the probation revocation (Tr. p. 51–52), following the interrogation and after federal charges had

been brought based on the federal interrogation. (6) The record in this case will not support the type of collusion necessary to make out a Sixth Amendment violation. *Martinez,* supra. (7) Interests of federalism require the collusion be real and not merely inferential. (8) There is no evidence of exploitation of defendant's Sixth Amendment right akin to that involved in *Mitcheltree.* The federal officer specifically asked defendant if he had an attorney and defendant said no. The state probation agent testified he did not believe defendant had an attorney. The federal officer made no attempt to skirt the defendant's Sixth Amendment rights. (9) The officer was not the alter ego of the state prosecutor.

Under these circumstances, it is concluded there was no collusion and otherwise no violation of the defendant's Sixth Amendment rights.

*Due Process*

■ The defendant at the evidentiary hearing seemed to suggest there may have been a Fifth Amendment due process violation. In fact, the defendant's statement was voluntary. Agent Thayne did not state or imply the questioning was "no big deal." The defendant made the decision to cooperate of his own free will based on his judgment that that was in his best interest. He was "extremely cooperative." The officers were polite. No promises, inducements, force or misrepresentation was involved. There is no basis for a claim of a due process violation as to defendant's statement. *Colorado v. Connelly,* 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986); *United States v. Trimble,* 986 F.2d 394 (10th Cir.1993).

*Conclusion*

The defendant William Arden Olsen's contention that his statement should be excluded for violation of *Miranda* or that it was involuntarily obtained is without merit. The defendant's argument of a violation of his Sixth Amendment rights is a significant issue; however, no Sixth Amendment violation occurred. Defendant's motion to suppress should be denied.

Copies of the foregoing report and recommendation are being mailed to the parties. They are hereby notified of their right to file objections hereto within 10 days from the receipt hereof.

DATED this 16th day of September, 1993.