THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. HENRY SMITH, Defendant-Appellant.

First District (2nd Division)  No. 1—98—1316

Opinion filed June 8, 1999.

Rita A. Fry, Public Defender, of Chicago (James N. Perlman, Assistant Public Defender, of counsel), for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, William Toffenetti, and Brendan J. Nelligan, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE GORDON delivered the opinion of the court:

The defendant, Henry Smith, was found guilty after a bench trial of two counts of first degree murder and one count of burglary. He was sentenced to terms of imprisonment of 40 years on the murder conviction and 7 years on the robbery conviction, to be served concurrently. On appeal he contends that the trial court erred in denying his motion to suppress his statement because he did not initiate conversation about the murder while at the police station and, even if he had reinitiated conversation, he was not immediately readvised of his *Miranda* rights by the police officer. The defendant also argues that in addition to being given the *Miranda* warnings he should have been given an admonishment regarding the felony murder rule. Finally, he seeks correction of the mittimus to reflect one murder conviction. For the reasons discussed below, we affirm defendant's felony murder and burglary convictions, vacate defendant's knowing murder conviction, and remand to the trial court to correct the mittimus.

## BACKGROUND FACTS

Carl Donner, Michael Ruth, and the defendant were convicted of the first degree murder of Carren Robinson and the burglary of Conrail boxcars. Briefly, the evidence against the defendant, during his simultaneous but severed trial, showed that Conrail police officer Kenneth Spiewak saw Donner and Ruth at the Conrail railroad yard at 63rd and Indiana Streets in Chicago at about 5 p.m. on March 26, 1995. Spiewak saw Donner and Ruth running across 67th Street carrying boxes. He approached them in his vehicle, and when they saw him, Donner and Ruth dropped the boxes they were carrying and ran toward a car. They entered the car and drove away. Spiewak followed them, activating his siren and lights. The vehicle in which Donner and Ruth were riding sped down an alley between Wabash and State Streets and between 69th and 70th Streets. Their vehicle hit Carren Robinson, who was playing basketball in the alley, killing him instantly. Donner and Ruth ran from the car, evading capture at that time. Spiewak testified that he later examined the railroad yard and determined that one of the railroad boxcars had been broken into no

more than 15 minutes before he saw Donner and Ruth in the vicinity of the railroad boxcar.

Chicago police officer Cornelius Spencer testified that on March 27, 1995, the Chicago police department received an anonymous tip regarding the hit-and-run automobile killing of Robinson. Spencer and three other officers then went to look for the defendant at about 1 a.m. When they found the defendant, he agreed to accompany them to the station for questioning. According to Spencer, the defendant was placed in an interview room and was advised of his *Miranda* rights. Spencer asked the defendant whether he understood his rights and the defendant stated that he did. The defendant then had a conversation with Spencer. Thereafter, the police went looking for Donner and Ruth.

Spencer further testified that, at approximately 3:30 a.m. on March 27, he had further contact with the defendant. Also present at that time was Assistant State's Attorney Charles Bell. Bell explained to the defendant his role in the investigation of Robinson's death and advised the defendant of his *Miranda* rights. The defendant then asked to see an attorney whereupon Spencer and Bell left the interview room. Approximately 15 minutes later, Spencer heard a knock on the interview room door. He opened the door, and the defendant asked to use the washroom. Spencer took the defendant to the washroom, and en route back to the interview room, the defendant told Spencer that he wanted to talk to Assistant State's Attorney Bell. Spencer did not say anything to the defendant. He located Bell and brought him to the interview room. According to Spencer, when Bell arrived, the defendant told him that "he wanted to do the right thing, get this off his chest, wanted to talk to him." Spencer testified that Bell immediately readvised the defendant of his *Miranda* rights and that the defendant indicated that he understood each one. The defendant then gave Bell an oral statement.

Spencer testified that Assistant State's Attorney Bell then prepared a written statement which the defendant reviewed, corrected and signed. (That statement was the subject of the motion to suppress which was denied.) In that statement, published to the court by Spencer, the defendant indicated that on March 26, 1995, at approximately 4 p.m. or 4:30 p.m., Donner, who was with a man named "Poem," asked him to "be a lookout while [they] hit some trucks" in return for the payment of money. The defendant got into Donner's car, a blue Buick, and drove to 6700 South Prairie. Donner let the defendant out of the car and told him to stand near the viaduct while he and "Poem" broke into the boxcars. The defendant watched as they went into boxcars and began walking back to the Buick with boxes. The defen-

dant stated that he saw a police truck and yelled to Donner and "Poem" to look out. The defendant saw them drop the boxes they were carrying and run to the Buick. The defendant then turned and began walking to 220 East 63rd Street to meet Donner and "Poem" to get paid. According to Spencer, the defendant also indicated in his written statement that he had been advised of his *Miranda* rights by Bell; that he understood his rights; that he had requested an attorney at which time Bell left the room; that he (the defendant) initiated a conversation with Assistant State's Attorney Charles Bell, stating he wished to speak with him about why he was at the police station; and that, when Bell returned, he readvised the defendant of his constitutional rights. The defendant further stated that he had been treated well by the police and Assistant State's Attorney Bell.

## DISCUSSION

### I. Defendant's Initiation of Further Discussion after Invoking Right to Counsel

The defendant first contends that the trial court should have suppressed his written statement because he did not clearly indicate a willingness and desire to initiate further discussion about the March 26, 1995, incident and because, even if he had initiated further discussion, the police did not readvise him of his *Miranda* rights before bringing Assistant State's Attorney Bell back to the interview room.

■ When during a custodial interrogation an accused invokes his right to counsel after being advised of his *Miranda* rights, interrogation by law enforcement authorities must cease until the accused has had an opportunity to confer with an attorney. *E.g., Miranda v. Arizona*, 384 U.S. 436, 474, 16 L. Ed. 2d 694, 723, 86 S. Ct. 1602, 1628 (1966); *People v. Olivera*, 164 Ill. 2d 382, 389-90, 647 N.E.2d 926, 930 (1995). The accused may not be subject to further custodial interrogation without the presence of counsel "unless the accused himself initiates further communication, exchanges, or conversations with the police." *Edwards v. Arizona*, 451 U.S. 477, 484-85, 68 L. Ed. 2d 378, 386, 101 S. Ct. 1880, 1885 (1981); *People v. Woolley*, 178 Ill. 2d 175, 197, 687 N.E.2d 979, 990 (1997). When determining whether the accused has initiated further communication in the absence of counsel, the following two-part inquiry must be made: (1) whether the accused, after invoking his or her right to counsel, initiated further conversation evincing a willingness and desire for a generalized discussion about the investigation; and (2) whether the accused has subsequently knowingly and intelligently waived his right to counsel and his right to remain silent. *Oregon v. Bradshaw*, 462 U.S. 1039, 1045-46, 77 L.

Ed. 2d 405, 412-13, 103 S. Ct. 2830, 2835 (1983); *Woolley*, 178 Ill. 2d at 198-99, 687 N.E.2d at 990; *Olivera*, 164 Ill. 2d at 389-90, 647 N.E.2d at 930. The latter inquiry includes consideration of the fact that the accused reopened discussion with the police. *Woolley*, 178 Ill. 2d at 199, 687 N.E.2d at 990. The burden remains on the State to show, by a preponderance of the evidence and under the totality of the circumstances, that the events subsequent to the defendant's invocation of his right to counsel indicate a waiver of that right. *Olivera*, 164 Ill. 2d at 390, 647 N.E.2d at 930; *People v. Allen*, 249 Ill. App. 3d 1001, 1016, 620 N.E.2d 1105, 1115 (1993). The trial court's determination of this issue will not be disturbed unless manifestly erroneous. *People v. Wright*, 272 Ill. App. 3d 1033, 1042, 651 N.E.2d 758, 764 (1995); *Allen*, 249 Ill. App. 3d at 1016, 620 N.E.2d at 1115-16.

█ In the instant case, the trial court determined that the defendant initiated further discussion, after invoking his right to counsel, by knocking on the interview room door and by telling Spencer that he wanted to speak to Bell. The court found that, before Bell spoke to the defendant, Bell readmonished the defendant concerning his *Miranda* rights. The court thereupon denied the defendant's motion to suppress.

The defendant argues that the trial court's finding that he had initiated conversation was against the manifest weight of the evidence. He argues that his statement to Officer Spencer requesting that Assistant State's Attorney Bell be summoned cannot be construed as evincing a willingness and desire for a generalized discussion about the investigation. He contends that such a request is qualitatively different from the statement found to have initiated further discussion in *Bradshaw*, 451 U.S. at 1045, 77 L. Ed. 2d at 412, 103 S. Ct. at 283 ("Well, what is going to happen to me now") and is even more innocuous than the statement found not to have initiated discussion in *Olivera*, 164 Ill. 2d at 390-91 ("What happened"). We disagree.

The trial court's determination that the defendant initiated further discussion with Officer Spencer and Assistant State's Attorney Bell is not manifestly erroneous. The record shows that, when the defendant invoked his right to counsel, no further contact was made with him either by the police or by the assistant State's Attorney. Approximately 15 minutes after his invocation of his right to counsel, the defendant knocked on the interview room door, requesting to be taken to the washroom. The record shows that Officer Spencer, upon hearing the defendant's knock, did nothing, either by word or action, to initiate conversation with the defendant. Spencer merely responded to the defendant's request by taking him to the washroom. See *Wright*, 272 Ill. App. 3d at 1042, 651 N.E.2d at 763-64, quoting *Bradshaw*, 462 U.S.

at 1045, 77 L. Ed. 2d at 412, 103 S. Ct. at 2835 (" 'inquiries or statements, by either an accused or a police officer, relating to routine incidents of the custodial relationship, will not generally "initiate" a conversation' "). Thereafter, while the defendant was being returned to the interview room, and without any word or action by Spencer, the defendant told Spencer that he wanted to talk to Bell. The substance of defendant's statement to Spencer is critical. See *Woolley*, 178 Ill. 2d at 201-02, 687 N.E.2d at 992 ("the substance of an accused's statement is, of course, crucial to a determination of whether the accused initiated further conversation"). While a suspect "does not have to explicitly state that he wishes to resume interrogation" (*Woolley*, 178 Ill. 2d at 200-01, 687 N.E.2d at 991), the statement made in the instant case comes very close to such a request.

The defendant argues that, in requesting to see Bell, he could have intended only to ask Bell for something relating to routine incidents of the custodial relationship. Such an inference is not borne out by the record, since the record shows that the defendant had previously sought such assistance from Spencer and could have made additional similar requests of Spencer if he desired such assistance. One would be hard-pressed to believe that the defendant had any desire other than to discuss the investigation with Bell. See *Bradshaw*, 462 U.S. at 1045-46, 77 L. Ed. 2d at 412, 103 S. Ct. at 2835 (finding suspect's question "Well, what's going to happen now," although ambiguous, constituted initiation and evinced willingness for generalized discussion about the investigation); *Allen*, 249 Ill. App. 3d at 1016, 620 N.E.2d at 1116 (finding that defendant reinitiated conversation with police officers by knocking on door 10 minutes after officers left room upon defendant's invocation of right to counsel). Moreover, an intention to initiate further discussion is clearly evidenced from the totality of the circumstances because when Bell arrived at the interview room, the defendant immediately told him that "he wanted to do the right thing, get this off his chest, wanted to talk to him."

■ The defendant next contends that even if his statement to Spencer can be characterized as an initiation of further discussion, his statements that followed should have been suppressed because Officer Spencer did not immediately readvise him of his *Miranda* rights before leaving to locate Bell. In support of this contention, the defendant cites to *dictum* in *Olivera* which states that the "interrogation" to which the *Miranda* safeguards apply "refers both to express questioning and to any words or actions on the part of the police *** that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Olivera*, 164 Ill. 2d at 391-92, 647 N.E.2d at

931. In reliance on this language, the defendant contends that Spencer should have given him *Miranda* warnings before leaving to locate Bell because Spencer should have known that, in bringing Bell to the defendant, he would be eliciting an incriminating statement from the defendant. As additional support for this argument, the defendant notes that in *Bradshaw* the police officer with whom discussion had been initiated immediately readvised the defendant of his *Miranda* rights before saying or doing anything else. See *Olivera*, 164 Ill. 2d at 391, 647 N.E.2d at 930 (distinguishing *Bradshaw* on the basis that the police officer immediately warned the defendant of his rights).

We do not believe that the *dictum* in *Olivera* cited by defendant requires a finding in the instant case that Officer Spencer should have given defendant *Miranda* warnings when the defendant asked to see Bell. A complete reading of *Olivera* suggests that a police officer must readvise the accused of *Miranda* warnings when the officer says or does something that could elicit further comment by the accused about the investigation *to the officer*. In both *Bradshaw*, where the officer readvised the defendant of the *Miranda* warnings, and in *Olivera*, where the officer made no such admonishment, the officers' responses to the questions of the accused elicited incriminating statements made to the officers. It was on that basis that the *Miranda* warnings were given in *Bradshaw* and should have been given in *Olivera*. In the instant case, however, Spencer's response to defendant's request to see Bell was neutral in character. Spencer did not verbally communicate with the defendant when the defendant asked to see Bell, and Spencer did nothing other than what the defendant requested him to do. The action taken by Spencer cannot be interpreted as having any potential to elicit further comment by the defendant to Spencer regarding the investigation so as to necessitate the giving of *Miranda* warnings by Spencer. Certainly, when Assistant State's Attorney Bell arrived and the defendant indicated to Bell that he wished to initiate discussion regarding the investigation, the need to give *Miranda* warnings was clear, and there is no question that such warnings were given before questioning of the defendant by Bell resumed.

## II. Felony Murder Admonishments

The defendant next raises a question of first impression as to whether the State was obligated, in addition to advising him of his *Miranda* rights, to advise him regarding the felony murder rule. He argues that when he initiated further discussion and when he was readvised of his *Miranda* rights that he also should have been advised that he was being questioned not only as a suspect in the burglary but as a suspect in the murder that occurred during the commission of the

burglary and that, by incriminating himself in the burglary, he was also incriminating himself in the murder. The defendant contends that an accused who has previously invoked his right to counsel is particularly entitled to such an admonishment at the time further discussion is initiated because the accused "has moved one step beyond the requirements of *Miranda* into the area where \*\*\* [he] is entitled to some specific information."

■ The policy behind the felony murder rule is to "deter persons from committing forcible felonies by holding them responsible for murder if death results." *People v. Dennis*, 181 Ill. 2d 87, 105, 692 N.E.2d 325, 335 (1998). Illinois follows the proximate cause theory of felony murder liability such that liability attaches for any death proximately resulting from the commission of the underlying felony even where the death results from the actions of the victim of the felony. *People v. Dekens*, 182 Ill. 2d 247, 695 N.E.2d 474 (1998); *People v. Lowery*, 178 Ill. 2d 462, 687 N.E.2d 973 (1997).

■ While conceding the general rule that ignorance of the law is no defense, the defendant nonetheless argues that few individuals understand the felony murder rule. He seeks expansion of the warnings given to a felony murder suspect based on language in *Miranda v. Arizona*, 384 U.S. at 474, 16 L. Ed. 2d at 724, 86 S. Ct. at 1628, that if the State does not provide "station house lawyers," then the State, through one of its agents, must provide the suspect with some of the information a "station house lawyer" would provide. We must reject defendant's attempt at broadening *Miranda*. *Miranda* did not impose upon the State the duty to provide particularized legal advice or information normally provided by retained or appointed counsel. See *Oregon v. Elstad*, 470 U.S. 298, 316-17, 84 L. Ed. 2d 222, 236-37, 105 S. Ct. 1285, 1296-97 (1985) (*Miranda* does not require the police to provide a suspect with any and all information that could be useful to a decision whether to remain silent or speak with the police). Rather, *Miranda* merely imposed a duty upon the State to advise the suspect of his more general rights to remain silent and to seek counsel. It also provided that, once the suspect exercised those rights, the State could not continue to interrogate the suspect unless the suspect later waived those rights.

The defendant further argues that, even if the felony murder admonishment is not required by the United States Constitution, it would be required by the Illinois Constitution of 1970. In support of this contention, he cites *People v. Griggs*, 152 Ill. 2d 1, 604 N.E.2d 257 (1992), and *People v. McCauley*, 163 Ill. 2d 414, 645 N.E.2d 923 (1994). *Griggs* and *McCauley* held that the police must inform an Illinois suspect that retained counsel is present at the police station before

obtaining the suspect's waiver of the right to counsel. *Griggs*, 152 Ill. 2d at 25-27, 604 N.E.2d at 267-68; *McCauley*, 163 Ill. 2d at 423, 645 N.E.2d at 929. Noting its direct conflict with *Moran v. Burbine*, 475 U.S. 412, 89 L. Ed. 2d 410, 106 S. Ct. 1135 (1986), which held that the federal constitution did not require the transmittal of such information to the suspect when the suspect was unaware that an attorney had been retained to represent him, *McCauley* stated that Illinois "constitutional guarantees afforded defendant a greater degree of protection." *McCauley*, 163 Ill. 2d at 423, 645 N.E.2d at 929.

Neither *Griggs* nor *McCauley* expanded the substance of the admonishments required by *Miranda*, however. Instead they held that the State could not interfere with the suspect's exercise of the *Miranda* rights such as by failing to apprise the suspect of information that counsel, with whom the suspect could consult, was present at the police station. See *Griggs*, 152 Ill. 2d at 27-28, 604 N.E.2d at 269, quoting *Burbine*, 475 U.S. at 456 n.42, 89 L. Ed. 2d at 443 n.42, 106 S. Ct. at 1159 n.42 (Stevens, J., dissenting) (finding " 'affirmative police interference in a communication between an attorney and a suspect [when the information withheld by the police] bears directly on the right to counsel that police are asking the suspect to waive' ").

The failure to give the felony murder admonishments sought by the defendant in the instant case does not amount to an interference with the accused's exercise of his basic *Miranda* rights, which includes the right to communicate with an attorney who is present at the police station. Thus, *Griggs* and *McCauley* are of no real support. The defendant disagrees and argues that the admonishments he seeks would, like the information that should have been given to the defendants in *Griggs* and *McCauley*, affect an accused's decision to exercise his right to counsel. He argues that the admonishments could lead the accused to conclude that the law is intricate and complex and could thereby influence the accused's decision to seek legal counsel.

While there is some logic to defendant's argument, the fact remains that the admonishments he seeks would expand by another dimension the constitutional right of the accused to be apprised of his rights to counsel and to remain silent. The giving of those admonishments would extend *Miranda* by requiring the police and other State agents to act as the accused's legal counsel to explain the elements of the criminal offense for which the accused is being interrogated. While the police and State agents are required to inform the accused of his constitutional rights to counsel and to remain silent in the absence of "station house lawyers" (*Miranda*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602), and are prohibited from interfering with the accused's exercise of those rights (*McCauley*, 163 Ill. 2d 414, 645 N.E.2d 923;

*Griggs*, 152 Ill. 2d 1, 604 N.E.2d 257), they are not required to inform the accused of the substantive elements of the criminal offense that is the subject of the interrogation (see, *e.g., Elstad*, 470 U.S. at 316-17, 84 L. Ed. 2d at 236-37, 105 S. Ct. at 1296-97). The latter type of information can be characterized as "a flow of information to help [the defendant] calibrate his self-interest in deciding whether to speak or stand by his rights" (*Burbine*, 475 U.S. at 422, 89 L. Ed. 2d at 421, 106 S. Ct. at 1141) and relates to disclosures not required by *Burbine*, 475 U.S. at 422, 89 L. Ed. 2d at 421, 106 S. Ct. at 1141, or *Griggs*, 152 Ill. 2d at 27-28, 604 N.E.2d at 268-69 (distinguishing between police failure to give suspect generally useful information, which is not required, and affirmative interference with communication between the attorney and the suspect, which is prohibited), or *McCauley*, 163 Ill. 2d 414, 645 N.E.2d 923. Such information involves sophisticated legal considerations of many variables, including the ultimate facts of the offense, that should most appropriately be explained by the attorney privately retained or appointed to represent the accused, not the lay police officer whose role is to interrogate or, for that matter, the State's Attorney, who is the prosecution's lawyer. To hold otherwise would open the door for the requirement of other admonishments to other similarly situated suspects who may not have physically committed the act giving rise to the charge but who are subject to prosecution for that offense under accountability or conspiracy theories of liability. Unlike blanket *Miranda* warnings, which can be reduced to a printed card, any such admonishments would have to be customized to the circumstances of each suspect, and the State would be at its peril in the event that any distortion or fallacy existed in the admonishment given.

Although defendant attempts to limit his argument to admonishments occurring after initiation of further discussion by the accused, there is no rational reason for distinguishing that interrogation from the initial interrogation which ceased upon the accused's exercise of his *Miranda* rights. The accused's protectible rights to counsel and against self-incrimination are the same at either juncture in the interrogation process. Since admonishments regarding culpability and liability are not required when interrogation begins (see, *e.g., Burbine*, 475 U.S. 412, 89 L. Ed. 2d 410, 106 S. Ct. 1135; *Elstad*, 470 U.S. 298, 84 L. Ed. 2d 222, 105 S. Ct. 1285; *Miranda*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602; *Griggs*, 152 Ill. 2d at 27-28, 604 N.E.2d at 268-69), they should not be required when interrogation resumes at the accused's request after the accused has withdrawn his or her previously asserted right to counsel. By initiating further discussion, the accused has chosen to forego the right to seek advice of counsel regarding the law and its application to the actions of the accused.

■ As his final argument on appeal, the defendant seeks correction of the mittimus. Although there was but one murder victim, the defendant was charged with three counts of murder, consistent with the various types of murder set forth by statute. See 720 ILCS 5/9—1 (West 1994). The defendant was convicted of two counts of murder, knowing murder (720 ILCS 5/9—1(a)(2) (West 1994)) and felony murder (720 ILCS 5/9—1(a)(3) (West 1994)), as well as burglary of the railroad boxcar (720 ILCS 5/19—1(a) (West 1994)). The State concedes that the defendant should have been convicted only of felony murder and burglary. See *People v. Cortes*, 181 Ill. 2d 249, 281-82, 692 N.E.2d 1129, 1143 (1998) (when there is one victim, a defendant can be convicted of only one count of murder). Accordingly, this court vacates defendant's conviction for knowing murder and remands this matter to the trial court to correct the mittimus to reflect the defendant's conviction for felony murder (720 ILCS 5/9—1(a)(3) (West 1994)) and burglary (720 ILCS 5/19—1(a) (West 1994)).

For the foregoing reasons, defendant's convictions for felony murder and burglary are affirmed; defendant's conviction for knowing murder is vacated; and the matter is remanded to the circuit court to correct the mittimus.

Affirmed in part; vacated in part; and remanded.

RAKOWSKI and COUSINS, JJ., concur.