THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DALE
SEALEY, Defendant-Appellant.

First District (3rd Division)    No. 1—96—3240

Opinion filed December 30, 1999.

Rita A. Fry, Public Defender, of Chicago (Joseph M. Gump, Assistant Public Defender, of counsel), for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, William D. Carroll, and Celeste Stewart Stack, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE CAHILL delivered the opinion of the court:

Defendant appeals his second degree murder conviction and 13-year sentence after a bench trial. We affirm.

Purnell Hall was killed on August 26, 1994, during a gang shoot-out between the Black Souls and the Gangster Disciples. The shooting happened at 9:45 p.m., near the corner of Madison and Sacramento Avenues.

Defendant, while in custody on a charge of unlawful possession of weapons, was questioned about the shooting of Hall. Defendant signed a statement that implicated him in the shooting, which in turn led to his trial and conviction for second degree murder. He raises two constitutional issues on appeal. He first argues that the statement implicating him in the shooting of Hall must be suppressed because it was obtained while he was in custody on a closely related charge—unlawful possession of weapons—in violation of the sixth amendment (U.S. Const., amend. VI). In the alternative, defendant argues that his statement must be suppressed under a fifth amendment analysis (U.S.

Const., amend. V), even if the charges were not closely related under the sixth amendment, because his attorney filed a "Notice of Representation" signed by defendant when he was charged with unlawful possession of weapons. The notice announced defendant's desire not to be questioned "on any case or matter whatsoever."

We reject defendant's constitutional arguments and affirm. We first hold that the charged offenses were not so closely related that defendant's sixth amendment rights were implicated. We then hold that the "Notice of Representation" did not prohibit defendant from waiving the rights claimed in the notice and voluntarily giving a statement on an uncharged offense after receiving *Miranda* warnings.

Evidence presented at the hearing on the motion to suppress and defendant's trial relevant to the issues raised in this appeal show that a gang altercation took place in Chicago on August 26, 1994. Shots were fired and a passerby was killed. On September 9, defendant orally admitted, and then signed a five-page statement in the presence of police officers and an assistant State's Attorney, that he fired the shotgun that killed the passerby. The events that took place between the night of the shooting and defendant's statement form the grounds for defendant's argument that his statement was obtained in violation of the fifth and sixth amendments.

On the night of the shooting, police were in the vicinity and began an immediate investigation. Several gang members at the scene were arrested, and several weapons were recovered from a house nearby where one of the gang members lived. Defendant was not involved in the investigation on the night of the incident.

On September 1 Officer Matt Pilolli received a tip from an informant that the weapon used in the August 26 shooting was in an apartment at 11 S. Whipple. Defendant lived in the apartment along with other members of the Black Souls gang. Pilolli conducted a consensual search of the apartment. He recovered two handguns from defendant's bedroom and a shotgun from another bedroom. Pilolli placed defendant under arrest for unauthorized possession of weapons and he was taken into custody. On September 2, defendant's attorney filed the "Notice of Representation" on the unlawful use of weapons charge, which underlies defendant's fifth amendment claim. At that time, the police did not know that the shotgun recovered from a bedroom in the apartment was, in fact, the weapon used in the August 26 shooting.

On September 5, another Black Souls gang member present at the shooting gave a statement to police, implicating defendant as the shooter.

The 12-gauge shotgun recovered on August 26 and the pump shotgun recovered from defendant's home on September 1 were examined on September 6 by Richard Fournier, a firearms expert. Fournier concluded that the two Winchester shells found at the scene came from the pump shotgun and the other two shells could have come from the 12-gauge shotgun. Fournier also concluded that the fragments removed from the victim were consistent with Winchester shells.

Defendant, in custody on the unlawful weapons charge, was writted in from jail on September 9, 1994, to answer questions about the shooting.

Defendant was given *Miranda* warnings and interviewed, and an assistant State's Attorney took a written statement. Defendant implicated himself in the August 26 incident. The State's Attorney and officers interviewing defendant knew that he was being held on an unlawful weapons charge.

Defendant moved to suppress the statement on the grounds that the interrogation and subsequent statement violated his sixth amendment right to counsel. The court denied the motion, finding that the weapons charge and the murder charge were not so closely related that they fell under the related offenses exception.

■ We generally review a trial court's ruling on a motion to suppress on a manifestly erroneous standard. *People v. James*, 163 Ill. 2d 302, 310, 645 N.E.2d 195 (1994). But a *de novo* standard is used when, as here, neither the facts nor the credibility of witnesses is in dispute and the issue presented is one of law. *People v. Dilworth*, 169 Ill. 2d 195, 201, 661 N.E.2d 310 (1996).

Defendant contends that, once he asserted his sixth amendment right to counsel at his bond hearing on the weapons charge, he was protected from further questioning by police on the yet uncharged murder because the two charges were "intricately related." We disagree.

■ A defendant represented by counsel may not be questioned about the charged offense when adversarial proceedings have begun. *People v. Wahl*, 285 Ill. App. 3d 288, 297, 674 N.E.2d 454 (1996). Nor can a defendant waive his sixth amendment right to counsel when a police officer reads *Miranda* warnings and the defendant agrees to questioning about a charge when adversarial proceedings have commenced on that charge. *Michigan v. Jackson*, 475 U.S. 625, 631-35, 89 L. Ed. 2d 631, 639-41, 106 S. Ct. 1404, 1408-11 (1986). The sixth amendment right to counsel is offense specific. It does not prohibit

questioning of a defendant in custody about unrelated offenses. *Wahl*, 285 Ill. App. 3d at 298.

The Supreme Court implicitly recognized an exception to this rule in *Maine v. Moulton*, 474 U.S. 159, 88 L. Ed. 2d 481, 106 S. Ct. 477 (1985). In *Moulton*, the court held that, if the right to counsel has attached in a charged offense, it may be triggered on an uncharged, yet "closely related," offense. *Moulton*, 474 U.S. at 180, 88 L. Ed. 2d at 498, 106 S. Ct. at 489. Our supreme court followed the *Moulton* reasoning in *People v. Clankie*, 124 Ill. 2d 456, 463, 530 N.E.2d 448 (1988), without setting out the elements of a "closely related" analysis.

■ In *Wahl*, we suggested an analytical framework to use in deciding whether crimes are closely related under the sixth amendment:

"There is no bright line test for whether the closely related offenses exception applies. Our survey of the cases discussing the exception indicates that three predominant factors should be examined. First, a court should determine whether the charged and uncharged offenses were committed against the same individual or entity. Second, a court should consider the amount of time between the acts forming the basis for the charged and uncharged offenses. The briefer the time period between the acts giving rise to the charged and uncharged offenses, the greater the likelihood the facts were part of the same factual transaction. This, in turn, militates in favor of finding that the sixth amendment right to counsel has attached to the uncharged offense. Third, a court should be watchful for any evidence that the investigative authorities of a second sovereign interrogated the defendant—in an attempt to elicit evidence concerning the facts forming the basis of an offense charged by the first sovereign—so the second sovereign might bring a similar charge based on the same factual transaction. A discussion of these factors should form the basis of a court's analysis of the closely related offenses exception." *Wahl*, 285 Ill. App. 3d at 299-300.

The first element of the *Wahl* analysis is of little help to us. The victims (and the incidents) are different. In *Wahl*, we cited favorably to *In re Pack*, 420 Pa. Super. 347, 616 A.2d 1006 (1992), where it was held that the sixth amendment right to counsel applies to all offenses arising from the same incident. While it is true that the August 26 shooting led the police to defendant's apartment on September 1, his arrest for unlawful possession of weapons was not in furtherance of the shooting investigation. The police had stumbled on one crime while investigating another. At the time defendant was placed under

arrest, the police had no probable cause to link defendant to the August 26 shooting. The second *Wahl* element, the time elapsed between the shooting and defendant's arrest for unlawful possession, is of no relevance given the facts of this case and the nature of the crimes charged.

The third element of the *Wahl* analysis is stressed by defendant. It is his theory that the police knew that one of the guns seized from defendant's apartment was used in the shooting when they interrogated him about the shooting on September 9. We find *United States ex rel. Espinoza v. Fairman*, 813 F.2d 117, 121 (7th Cir. 1987), *overruled on other grounds by McNeil v. Wisconsin*, 501 U.S. 171, 115 L. Ed. 2d 158, 111 S. Ct. 2204 (1991), instructive in responding to defendant's argument. In *Espinoza*, the defendant was arrested for unlawful use of weapons. Counsel was appointed for him on that charge. A ballistics test later revealed that the defendant's gun had been used in a murder. The defendant was questioned about the murder and confessed. The weapons charge was dropped and the defendant was convicted of murder. *Espinoza*, 813 F.2d at 118-19. The defendant appealed, claiming fifth and sixth amendment violations.

The court first considered whether the murder charged was so closely related to the weapons charge that defendant's sixth amendment rights on the murder charge had vested when he was questioned. The court rejected this argument, saying: "It is enough to say that in this case the crimes are so unrelated as to render any such theory inapplicable." *Espinoza*, 813 F.2d at 121. The *Espinoza* court then concluded that the defendant's sixth amendment rights were not violated. The court reasoned:

> "The only common thread linking the weapons and the murder cases is the weapon involved. The two offenses involved different victims on different dates. There is no claim that they were part of any pattern or plan. Although [the defendant's] arrest on the weapons charge did provide police with evidence—which they might not otherwise have obtained—that led to his arrest for the Foy murder, this fortuity does not change the fact that the weapons offense and the murder were, in every constitutionally significant aspect, separate crimes." *Espinoza*, 813 F.2d at 121 n.1.

As in *Espinoza*, the only common denominator here between the weapons charge and the murder is the shotgun found in defendant's house. The shotgun was not discovered in defendant's bedroom, but in another man's bedroom. We do not believe this fortuity makes

an otherwise unrelated offense "closely related" for sixth amendment purposes.

Only after defendant's arrest on the weapons violation did the police have evidence that defendant may have been involved in the murder. This information was received from another gang member arrested on drug charges on September 5. The informant provided a detailed account of defendant's involvement in the murder to a grand jury. Defendant was questioned based on this testimony.

■ Next, defendant argues that his statement regarding the murder violated his fifth amendment right to counsel. Defendant bases this argument on the "Notice of Representation" filed at his bond hearing. Defendant contends that the language of the notice was effective to assert both his fifth and sixth amendment rights. Once his fifth amendment rights were exercised, he could not be interrogated on any charge, related or not, without his attorney present. The fifth amendment differs from the sixth amendment in that, once asserted, it protects a defendant from further interrogations on any offenses. In *McNeil v. Wisconsin*, 501 U.S. 171, 115 L. Ed. 2d 158, 111 S. Ct. 2204 (1991), the Supreme Court held that a defendant's invocation of his sixth amendment right to counsel during a judicial proceeding does not trigger the defendant's fifth amendment right to counsel as to uncharged offenses. *McNeil*, 501 U.S. at 176-82, 115 L. Ed. 2d at 167-71, 111 S. Ct. at 2208-11. Our supreme court adopted the legal reasoning of *McNeil* in *People v. Perry*, 147 Ill. 2d 430, 590 N.E.2d 454 (1992).

Even if we were to assume that the notice of representation prohibits questioning defendant on "any case or matter whatsoever," the result would be the same. We have found no case holding that defendant cannot later waive this broad invocation after proper *Miranda* warnings have been given and the questioning relates to uncharged offenses in which adversarial proceedings have not commenced.

Affirmed.

CERDA and BURKE, JJ., concur.