THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. HENRY D. GRAHAM, Defendant-Appellant.

Fourth District   No. 4—01—0550

Opinion filed June 20, 2003.

Daniel D. Yuhas and Michael H. Vonnahmen, both of State Appellate Defender's Office, of Springfield, for appellant.

Frank Young, State's Attorney, of Danville (Norbert J. Goetten, Robert J. Biderman, and Thomas R. Dodegge, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE STEIGMANN delivered the opinion of the court:

Following an October 2000 stipulated bench trial, the trial court convicted defendant, Henry D. Graham, of first degree murder (felony murder), home invasion, residential burglary, and attempt (robbery) (720 ILCS 5/9—1(a)(3), 12—11(a)(2), 19—3(a), 8—4(a), 18—1(a) (West 1998)). In May 2001, the court sentenced him to 20 years in prison on the felony-murder conviction, to be served concurrently with a sentence he was already serving. (The court did not enter judgment on the other convictions, having determined that they merged into defendant's conviction for felony murder.)

Defendant appeals, arguing that (1) the trial court erred by denying his motion to suppress statements he made to police officers because those statements were elicited in violation of his right to counsel under both the fifth and sixth amendments; and (2) the State failed to prove him guilty of felony murder beyond a reasonable doubt. We affirm.

## I. BACKGROUND

### A. Pretrial Proceedings

In February 2000, the State charged defendant with seven counts of first degree murder: (1) counts I through IV charged defendant with the intentional or knowing murder of Peter Godels, who was 81 years old (720 ILCS 5/9—1(a)(1), (a)(2) (West 1998)); and (2) counts V through VII charged defendant with the felony murder of Godels based on the forcible felonies of home invasion, residential burglary, and robbery, respectively (720 ILCS 5/9—1(a)(3), 12—11(a)(2), 19—3(a), 18—1(a) (West 1998)). The State also charged defendant with two counts of home invasion (counts VIII and IX), two counts of residential burglary (counts X and XI), and attempt (robbery) (count XII) (720 ILCS 5/12—11(a)(2), 19—3(a), 8—4(a), 18—1(a) (West 1998)).

In March 2000, defendant filed a motion to suppress statements he made to police officers following his arrest. In that motion, defendant alleged that (1) the officers did not inform him that he

could speak with his retained attorney or advise his attorney that they were interviewing defendant; and (2) the officers refused his request to speak with "an attorney, Larry S. Mills."

At the June 2000 hearing on defendant's motion to suppress, Vermilion County sheriff's department investigator Todd Damilano testified that on February 1, 2000, he and Vermilion County sheriff's department investigator Kirk Miller interviewed defendant, who was in the Vermilion County jail on unrelated charges. After being advised of his *Miranda* rights (*Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966)), defendant waived those rights and agreed to make a statement about Godels's murder to Damilano and Kirk. At some point during the interview, defendant asked to speak with Mills, the Vermilion County State's Attorney. Damilano testified regarding defendant's request as follows:

"A. [Defendant] kept stating that he did not know why Josh Kruger [the other suspect in this case] was bringing [defendant's] name up into this matter. He asked me for clarification. I stated maybe Kruger wanted to help himself out in this matter.

[Defendant] asked me to clarify how Kruger would help himself out. I said well, possibly talking to the state's attorney.

[Defendant] said who is the state's attorney? I stated [Mills].

[Defendant] stated ['C]an [Mills] help me out in this situation?['] Stated—

Q. [Prosecutor:] What happened then?

A. There was a long pause. He stated get me Mills."

Kirk then left the interview room and spoke with Vermilion County sheriff's department chief investigator Gary Miller. A few minutes later, Kirk returned and told defendant that Mills was aware that defendant was speaking with the officers, and defendant could not talk with Mills "at that time." Damilano and Kirk then began questioning defendant again, and defendant ultimately made incriminating statements about his involvement in Godels's death.

Damilano further testified that defendant did not request to speak with an attorney other than Mills. Damilano did not know if defendant had an attorney on the unrelated charges. However, he acknowledged that all individuals who have been in jail for "over a day or two" have an attorney. Damilano also acknowledged that (1) it would not have been difficult to determine the name of defendant's attorney; and (2) he did not attempt to learn defendant's attorney's name or inform defendant that the officers could call his attorney.

Kirk testified that after defendant asked to speak with Mills, Gary told him that (1) Mills was aware that the officers were interviewing defendant; and (2) the officers would convey to Mills any information

from the interview. Defendant did not ask to speak with an attorney other than Mills. Kirk assumed that defendant had an attorney on the unrelated charges. However, he did not ask defendant the name of his attorney.

Gary testified that when he was present during the February 1, 2000, interview, defendant did not ask to speak to an attorney other than Mills. Gary acknowledged that after he told defendant that Mills was not available, he did not inform defendant that he could have his attorney present during the interview. Gary stated that he believed that defendant wanted to speak with Mills "about a deal."

After considering the evidence and counsel's arguments, the trial court denied defendant's motion to suppress his statements to police. In so doing, the court stated, in pertinent part, as follows:

"[I]t's clear to me from this testimony that [defendant] was seeking an opportunity to talk to [State's Attorney Mills]. And from my view of this frankly, I can't see where [defendant] at all could consider that [Mills] was going to come over there and represent his interests, because I think [defendant] has had experience with the criminal justice system, I would say that by my judicial notice of previous files, so he knows that [Mills] is going to prosecute him potentially and that [Mills] represents the People of the State of Illinois. And while [defendant] may be one of those people, [Mills] is not there to represent his interests."

## B. Defendant's Stipulated Bench Trial

In October 2000, defendant waived his right to a jury trial and agreed to a stipulated bench trial. The stipulated facts showed the following. Around 9:30 or 10 p.m. on July 14, 1999, Kruger approached defendant and told him that Kruger knew where they could find a "lick," which meant some money. Defendant then went with Kruger to Godels's residence in Westville. Kruger, who was carrying a crowbar, walked in the unlocked front door, and defendant followed behind him. Kruger and defendant then entered Godels's bedroom, where Godels was lying in bed reading. According to defendant, Kruger pulled Godels from bed and dragged him to the floor. Kruger asked Godels where he kept his money. When Godels did not answer, Kruger put duct tape over Godels's mouth and attempted to tie him up. Kruger then hit Godels on the head with the crowbar. Defendant stood in the bedroom and watched Kruger attack Godels. Kruger ransacked Godels's house but could not find any money. Defendant and Kruger then left the house and drove to an area near some railroad tracks, where Kruger threw the crowbar into the weeds and burned his clothes.

When police officers arrived on the scene the next evening, they

found Godels's body on his bedroom floor. An autopsy later showed that Godels died from head injuries due to blunt force trauma. The officers also found open dresser drawers that appeared to have been searched and several blood-spattered items on the bedroom floor.

After considering the stipulated facts and counsel's closing arguments, the trial court took the matter under advisement. In a November 2000 written order, the court found defendant guilty of felony murder, home invasion, residential burglary, and attempt (robbery) (720 ILCS 5/9—1(a)(3), 12—11(a)(2), 19—3(a), 8—4(a), 18—1(a) (West 1998)). In so finding, the court stated, in pertinent part, as follows:

> "[Defendant] planned and intended to gain entrance to [Godels's] residence in order to commit a theft. The [c]ourt's finding of [defendant's] guilt for the offenses of [h]ome [i]nvasion, [r]esidential [b]urglary[,] and ([a]ttempt) [r]obbery, support a conviction of [defendant] of [f]elony [m]urder."

The court also found that the State had failed to prove defendant guilty beyond a reasonable doubt of intentional or knowing murder on an accountability theory.

In May 2001, the trial court entered judgment on count V (felony murder of Godels based on the forcible felony of home invasion) (720 ILCS 5/9—1(a)(3), 12—11(a)(2) (West 1998)) and sentenced defendant as earlier stated. This appeal followed.

## II. ANALYSIS

### A. Defendant's Motion To Suppress

Defendant first argues that the trial court erred by denying his motion to suppress statements he made to police officers because those statements were elicited in violation of his right to counsel under both the fifth and sixth amendments (U.S. Const., amends. V, VI). We disagree.

### 1. *Standard of Review*

■ When reviewing a trial court's decision on a motion to suppress statements, we give deference to that court's factual findings and will reverse those findings only if they are against the manifest weight of the evidence. *People v. DeSantis*, 319 Ill. App. 3d 795, 802, 745 N.E.2d 1, 7 (2000). However, we review *de novo* "the ultimate question of the defendant's legal challenge to the denial of his motion to suppress." *People v. Sorenson*, 196 Ill. 2d 425, 431, 752 N.E.2d 1078, 1083 (2001).

### 2. *Defendant's Fifth Amendment Claim*

Defendant first contends that the trial court erred by denying his motion to suppress statements he made to police officers because those

statements were elicited in violation of the fifth amendment (U.S. Const., amend. V). Specifically, he contends that the officers should have immediately ceased the interrogation when he requested to speak with Mills. We disagree.

■ In *Miranda v. Arizona*, 384 U.S. at 467, 16 L. Ed. 2d at 719, 86 S. Ct. at 1624, the United States Supreme Court determined that the fifth amendment privilege against self-incrimination applies in custodial interrogations. Accordingly, the Court determined that certain measures were necessary to protect the fifth amendment rights of those subjected to such interrogation. To accomplish this objective, the Court (1) held that police interrogators must advise suspects of their rights under the fifth and fourteenth amendments before questioning them about suspected crimes and (2) set forth the now-familiar *Miranda* warnings. *Miranda*, 384 U.S. at 471, 16 L. Ed. 2d at 721-22, 86 S. Ct. at 1626; see *People v. Winsett*, 153 Ill. 2d 335, 348, 606 N.E.2d 1186, 1194 (1992). "The purpose of the warnings is to ensure that the accused is aware of his substantive constitutional right not to incriminate himself and to provide him with the opportunity to exercise that right." *Winsett*, 153 Ill. 2d at 348, 606 N.E.2d at 1194.

■ Among other things, suspects must be warned that they have the right to either retained or appointed counsel during questioning. *Miranda*, 384 U.S. at 479, 16 L. Ed. 2d at 726, 86 S. Ct. at 1630. The *Miranda* Court explained that "the right to have counsel present at the interrogation is indispensable to the protection of the [f]ifth [a]mendment privilege." *Miranda*, 384 U.S. at 469, 16 L. Ed. 2d at 721, 86 S. Ct. at 1625. "The primary purpose of counsel is to act as a 'protective device[ ] *** to dispel the compulsion inherent in custodial surroundings.' " *Winsett*, 153 Ill. 2d at 348-49, 606 N.E.2d at 1194, quoting *Miranda*, 384 U.S. at 458, 16 L. Ed. 2d at 714, 86 S. Ct. at 1619. The presence of counsel at interrogation reduces the likelihood that the police will coerce a suspect into confessing. *Winsett*, 153 Ill. 2d at 349, 606 N.E.2d at 1194.

■ In *Winsett*, 153 Ill. 2d at 349, 606 N.E.2d at 1194, our supreme court discussed the procedures police must follow if a suspect invokes his right to counsel:

"If a suspect invokes his right to counsel in response to *Miranda* warnings, all interrogation must cease until an attorney is present. [Citations.] The Court in *Miranda* thus 'fashioned *** the rigid rule that an accused's request for an attorney is *per se* an invocation of his [f]ifth [a]mendment rights.' [Citation.]

In *Edwards v. Arizona*, [451 U.S. 477, 484-85, 68 L. Ed. 2d 378, 386, 101 S. Ct. 1880, 1884-85 (1981)], the Court reconfirmed the

principles expressed in *Miranda* and emphasized that, where an accused requests counsel, not only must the current interrogation cease, but the suspect may not be approached for further interrogation 'until counsel has been made available to him.' [Citation.]"

■ The testimony at the hearing on defendant's motion to suppress showed that defendant asked to speak with Mills, the Vermilion County State's Attorney, in Mills' capacity as the State's Attorney. Defendant wanted to meet with Mills to discuss the possibility of Mills "help[ing defendant] out" with a deal of some sort, possibly a plea agreement. Defendant clearly did not request to see Mills so that Mills could serve as his counsel and protect his rights during the interrogation. Accordingly, we conclude—as did the trial court—that defendant's request to speak with Mills did not constitute an invocation of his right to counsel under *Miranda*. *Cf. People v. Smith*, 306 Ill. App. 3d 82, 87, 713 N.E.2d 140, 144 (1999) (concluding that the defendant's request to speak with an assistant State's Attorney during an interrogation constituted an initiation of further discussions concerning the police investigation).

### 3. *Defendant's Sixth Amendment Claim*

Defendant also contends that the trial court erred by denying his motion to suppress statements he made to police officers because those statements were elicited in violation of his sixth amendment right to counsel. Specifically, he contends that "since the police interviewed [him] without telling [him] he could speak to his retained counsel and without telling the retained counsel the police were interviewing [him], the [m]otion to [s]uppress should have been granted." We disagree.

■ A defendant who is represented by counsel may not be questioned about charges upon which adversarial criminal proceedings have commenced. Further, a defendant does not waive his sixth amendment right to counsel when a police officer gives *Miranda* warnings to the defendant, who then agrees to questioning about a charge when adversarial proceedings have commenced on that charge. *People v. Sealey*, 311 Ill. App. 3d 120, 123, 724 N.E.2d 110, 113 (1999).

However, the sixth amendment right to counsel—unlike an accused's assertion of his *Miranda* right to counsel during custodial interrogation—is offense specific. *People v. Maxwell*, 148 Ill. 2d 116, 128, 592 N.E.2d 960, 966 (1992). Thus, simply because a defendant is represented by counsel on a charged offense does not prevent the police from questioning him about other unrelated offenses. *Maxwell*, 148 Ill. 2d at 128-29, 592 N.E.2d at 966; *People v. Harper*, 311 Ill. App. 3d 104, 106, 723 N.E.2d 1171, 1172 (1999).

■ In this case, although defendant was represented by counsel when police interrogated him regarding Godels's death, that represen-

tation was on a drug offense unrelated to the present charges. Thus, defendant's sixth amendment rights were clearly not implicated, and once defendant waived his *Miranda* rights, the police could properly question him regarding his involvement in this incident without the presence of counsel. See *McNeil v. Wisconsin*, 501 U.S. 171, 175-77, 115 L. Ed. 2d 158, 166-68, 111 S. Ct. 2204, 2207-08 (1991) (in which the United States Supreme Court concluded that the defendant's statements, made in the wake of a valid *Miranda* waiver, were admissible at the defendant's trial, notwithstanding the defendant's earlier assertion of his offense-specific sixth amendment right to counsel on an unrelated charge).

Nonetheless, defendant contends that the police should have informed (1) him that his retained counsel on unrelated charges could be contacted, and (2) defendant's retained counsel that the police were interrogating defendant on other charges. In support of his contention, defendant primarily cites *People v. McCauley*, 163 Ill. 2d 414, 645 N.E.2d 923 (1994). However, that case is inapposite.

In *McCauley*, the police had brought the defendant to the police station in connection with a recent shooting death. After advising the defendant of his *Miranda* rights, police detectives began questioning him. *McCauley*, 163 Ill. 2d at 418, 645 N.E.2d at 926-27. Unbeknownst to the defendant, his family had retained an attorney on his behalf. While the detectives were questioning the defendant, his counsel arrived at the police station, identified himself as the defendant's counsel, and asked to speak with the defendant. The detectives refused to (1) allow counsel to speak with the defendant, and (2) tell the defendant that his counsel was present. *McCauley*, 163 Ill. 2d at 418-19, 645 N.E.2d at 927.

The trial court in *McCauley* granted the defendant's motion to suppress his statements, and the supreme court affirmed, ruling that the State could not use any statements the defendant made after his counsel was present at the police station and refused access to the defendant. *McCauley*, 163 Ill. 2d at 449, 645 N.E.2d at 941. In so doing, the supreme court concluded that the police conduct violated the defendant's privilege against compelled self-incrimination and his right to due process under the Illinois Constitution of 1970. *McCauley*, 163 Ill. 2d at 446, 645 N.E.2d at 939. The court reasoned, in part, that "due process is violated when police interfere with a suspect's right to his attorney's assistance and presence by affirmatively preventing the suspect, exposed to interrogation, from receiving the immediately available assistance of an attorney hired or appointed to represent him." *McCauley*, 163 Ill. 2d at 444, 645 N.E.2d at 938.

The *McCauley* court's paramount concern was that police not

actively prevent a suspect under interrogation from having access to readily available assistance of counsel. The supreme court in *McCauley* did not hold—or even suggest, for that matter—that the police are required to (1) determine the identity of, or contact, a defendant's counsel, who has been retained or appointed on a wholly unrelated offense, prior to interrogating the defendant regarding a different offense, or (2) inform a defendant that he may consult with his counsel on an unrelated offense (who has neither informed the police that he represents the defendant nor requested access to the defendant) prior to conducting an interrogation regarding a different offense.

## B. Sufficiency of the Evidence

Last, defendant argues that the State failed to prove him guilty of felony murder beyond a reasonable doubt. We disagree.

■ Initially, we note that defendant challenges the sufficiency of the State's evidence on count VI, which charged defendant with committing the offense of felony murder based on the forcible felony of residential burglary. Defendant relies on the trial court's comment in its November 2000 written order that defendant "planned and intended to gain entrance to [Godels's] residence in order to commit a theft." However, the court also (1) found that defendant's "guilt for the offenses of [h]ome [i]nvasion, [r]esidential [b]urglary[,] and ([a]ttempt) [r]obbery, support a conviction of [defendant] of [f]elony [m]urder," and (2) entered judgment only on count V (felony murder of Godels based on the forcible felony of home invasion) (720 ILCS 5/9—1(a)(3), 12—11(a)(2) (West 1998)). The court, as the trier of fact in a bench trial, was under no obligation to provide an explanation for its verdict (see *People v. Curtis*, 296 Ill. App. 3d 991, 1000, 696 N.E.2d 372, 379 (1998) ("The trier of fact in a bench trial is not required to mention everything—or, for that matter, anything—that contributed to its verdict")), and the court's comment regarding defendant's intent was mere musing. Thus, we will review the sufficiency of the evidence on count V alone.

■ Section 9—1(a)(3) of the Criminal Code of 1961 provides that "[a] person who kills an individual without lawful justification commits first degree murder if, in performing the acts which cause the death *** he is attempting or committing a forcible felony other than second degree murder." 720 ILCS 5/9—1(a)(3) (West 1998). Home invasion is a forcible felony. See 720 ILCS 5/2—8 (West 1998); see also *People v. Ramey*, 151 Ill. 2d 498, 538, 603 N.E.2d 519, 536 (1992) (recognizing that home invasion is a forcible felony). A defendant commits home invasion if, without authority, he or she

"knowingly enters the dwelling place of another and remains in

such dwelling place until he or she knows or has reason to know that one or more persons is present and

\*\*\*

(2) Intentionally causes any injury to any person or persons within such dwelling place." 720 ILCS 5/12—11(a)(2) (West 1998).

■ Under the felony-murder statute, a felon is responsible for the direct and foreseeable consequences of his initial criminal acts. The purpose behind the felony-murder statute is to limit the violence that accompanies the commission of forcible felonies, so that a person engaged in such violence will be automatically subject to a murder prosecution should someone be killed during the commission of a forcible felony. *People v. Belk*, 203 Ill. 2d 187, 192, 784 N.E.2d 825, 828 (2003). " 'One may be convicted of felony murder even though he did not intend to kill anyone and did not personally kill anyone \*\*\*.' " *Ramey*, 151 Ill. 2d at 538, 603 N.E.2d at 536, quoting *People v. Miller*, 89 Ill. App. 3d 973, 979, 412 N.E.2d 175, 180 (1980).

■ In *People v. Howery*, 178 Ill. 2d 1, 38, 687 N.E.2d 836, 854 (1997), the supreme court discussed the standard of review in bench trials, as follows:

"The standard for reviewing the sufficiency of the evidence in a bench trial is the same as it is in a jury trial. [Citation.] The question of whether the conviction may be sustained depends on 'whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.' [Citations.] The relevant inquiry is 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' (Emphasis in original.) [Citation.]"

See also *People v. Maggette*, 195 Ill. 2d 336, 353, 747 N.E.2d 339, 349 (2001) ("A reviewing court will not set aside a criminal conviction on grounds of insufficient evidence unless the proof is so improbable or unsatisfactory that there exists a reasonable doubt of the defendant's guilt").

■ The stipulated evidence showed the following: (1) defendant and Kruger, who was armed with a crowbar, entered Godels's dwelling place without authority; (2) defendant and Kruger remained in Godels's residence until they found Godels lying in his bed; and (3) defendant watched as Kruger pulled Godels from bed, dragged him to the floor, and beat him to death with the crowbar. As the State points out, the evidence established that (1) defendant committed the offense of home invasion when he knowingly entered Godels's dwelling place without authority and remained there while Kruger intentionally injured Godels; (2) Kruger killed Godels during the course of the home

invasion; and (3) defendant was accountable for the offense of home invasion because he knowingly aided Kruger by entering and remaining in Godels' residence with the intent to facilitate an offense.

Having carefully reviewed the evidence in the light most favorable to the State, we conclude that the evidence supports the guilty verdict. The evidence before the trial court in this bench trial was not so improbable or unsatisfactory that the guilty verdict cannot be permitted to stand.

In so concluding, we reject defendant's contention that the guilty verdict was improper because the trial court found that no evidence existed that defendant "actively participated in hitting" Godels. Who committed the specific acts that resulted in the victim's death is irrelevant under the felony-murder rule. See *Ramey*, 151 Ill. 2d at 538, 603 N.E.2d at 536 (an individual may be convicted of felony murder even though he did not personally kill the victim); *People v. Toney*, 337 Ill. App. 3d 122, 146, 785 N.E.2d 138, 158 (2003) ("who fired the fatal shot is irrelevant under the theory of felony murder").

## III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

COOK and TURNER, JJ., concur.