OPINION
Defendant-appellant Hueston R. Tigner appeals from his conviction and sentence, following a no-contest plea, on one count of Possession of Crack Cocaine, one count of Possession of Heroin, and one count of Possession of Marijuana. Tigner contends that the trial court erred by denying his motion to suppress evidence upon the ground that it was unlawfully obtained. Tigner contends that the entry by police officers into his home, leading to the discovery of the evidence, was an unreasonable search and seizure, in violation of the Fourth Amendment to the United States Constitution, and that the officers' confrontation of him, while an indictment was pending against him for a closely related offense, violated his right to counsel under the Sixth Amendment to the United States Constitution.
Based upon our review of the record, we conclude that the police officers' entry into Tigner's home, and, thereafter, into his dining room, was with his consent, so that there was noFourth Amendment violation. Furthermore, we find nothing in the record to indicate that the police officers who confronted him at his home were aware of the fact that an indictment was pending against him on a closely related offense. Accordingly, we find no violation of Tigner's Sixth Amendment right to counsel.
Because we find no merit to either of Tigner's arguments, the judgment of the trial court is Affirmed.
Although not directly the subject of the prosecution resulting in this appeal, a confidential informant made two controlled purchases of illegal substances from Tigner at his residence, on January 7, and January 9, 1998. Thereafter, police obtained a search warrant and an arrest warrant. On January 13, 1998, both warrants were executed, resulting in the discovery and seizure of quantities of crack cocaine, heroin, powdered cocaine, and marijuana. On February 17, 1998, Tigner was charged by indictment with six (6) counts of drug-related offenses, resulting from the discovery of these drugs in his home on January 13, 1998.
On March 13, 1998, Dayton Police Officer Monica Hunt was part of a team of police officers who were performing "knock and advises" that night. She explained at the suppression hearing that they had a list of houses about which there had been complaints, and that they were going through the list, beginning with those houses with respect to which there had been the most complaints.
Hunt testified that she knocked on the door at Tigner's residence, that he opened the door, that he greeted her by name, and that he said, "Come in." Hunt testified that Tigner let her into his living room, and stood near a chair, while Hunt began reading from her knock and advise form. She testified that when she was half-way through the form, Tigner began walking into the dining room, towards the kitchen. She testified that she was not requested to stay in the living room, and that she, and one other officer who had entered the house with her, followed Tigner into the dining room. She testified that she was motivated, at least in part, by a concern for her safety because Tigner appeared to be very nervous and there were neighborhood complaints that drugs were being sold at this residence. Because she was concerned about her safety, she did not want Tigner out of her sight while she was in the residence. In fact, she testified that if Tigner had started to go upstairs, she would have asked him to remain downstairs until she had completed her mission.
As soon as Hunt entered the dining room area, she observed another man in the dining room with what appeared to be a large piece of crack cocaine. At this point, she secured that area of the house and obtained Tigner's written consent to search. Notwithstanding that she had a written consent to search, a search warrant was applied for, and a search of the premises, beyond what was in plain view, did not occur until the search warrant was obtained.
At some point, Dayton Police Detective Jorge Delrio was called to the scene. Delrio talked to Tigner about the drugs after first advising Tigner of his Miranda rights. Delrio testified that Tigner agreed to talk to him, after first having been advised of his rights, although Tigner declined to sign or initial the waiver form.
Tigner was arrested and charged by indictment with one count of Possession of Crack Cocaine, one count of Possession of Heroin, and one count of Possession of Marijuana. Tigner moved to suppress the evidence, contending that it was obtained as the result of an unlawful search, and as the result of a violation of his right, under the Sixth Amendment to the United States Constitution, to the assistance of counsel. Following a hearing, Tigner's motion to suppress was denied. Thereafter, Tigner pled no contest to the charges, was found guilty, and was sentenced accordingly. From his conviction and sentence, Tigner appeals.
Tigner's First Assignment of Error is as follows:
 THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO SUPPRESS WHEN IT HELD THAT HE HAD GIVEN VOLUNTARY CONSENT TO HIS HOME.
Hunt testified that when there are neighborhood complaints that drugs are being sold from a residence, the policy of her department is to perform a "knock and advise" at that residence. The purpose of the visit is to let the resident know that neighbors have complained about drug transactions at that house.
It is clear from Hunt's testimony that Tigner, at an early point, greeted her by name and invited her to come in. It is not clear whether Hunt gave Tigner any explanation of the purpose of their visit before receiving his introduction to come in. From our review of the record, it appears that, at most, Hunt may have told Tigner, very briefly, that they were there for a "knock and advise."
Although Hunt testified that it is routine procedure during a "knock and advise" to seek consent to search the premises, there is nothing in this record to suggest that she had communicated that intent to Tigner before receiving his invitation to come in. Thus, although there were evidently a fair number of police officers and police equipment outside Tigner's residence, there is nothing in the record to establish that they communicated, verbally or otherwise, to Tigner their intent to do anything more that perform a "knock and advise," meaning that they would simply tell him that there were neighborhood complaints that drugs were being sold at his residence.
As Tigner points out, the question of whether consent — in this case, the consent to enter his home — is voluntary, is to be determined from the totality of the circumstances. Schneckloth v.Bustamonte (1973), 93 S.Ct. 2041, 2048. Tigner relies upon Statev. Sanchez (April 24, 1998), Greene App. 97-CA-32, unreported, for the proposition that Tigner's consent was not voluntary because a police office accompanied him about the home. In our view,Sanchez, supra, is distinguishable. In that case, the defendant was substantially under the influence of alcohol at the time of his confrontation with the police officer; whereas, in the case before us, there is no indication that Tigner suffered any mental impairment at the time of his confrontation with Hunt. Furthermore, in Sanchez, the analysis concerned a subsequent consent to search the home, rather than the initial entry into the home. Under all of the circumstances, we concluded that the defendant in that case, who knew little English, and was unfamiliar with this country's legal system, was not aware that he had a right to decline the officer's request to search his home.
In the case before us, there is no reason to believe that Tigner suffered a similar unfamiliarity with the English language, or with the legal customs of this country. Furthermore, the only real concern is whether the police officers' entry into Tigner's home, and, thereafter, into his dining room, was consensual. Although Tigner subsequently consented to a search of his home, it appears from the record that a search, beyond what was already in plain view, was not conducted until after a search warrant had been obtained, thereby making Tigner's consent to search superfluous. We have found nothing in this record to indicate that the police officers' entry into Tigner's home, or, thereafter, their following him into the dining room, was without Tigner's voluntary consent. Tigner invited the officers to enter his living room. At no time did he request that they remain within the living room. While Hunt was in the middle of reading the "knock and advise" form to him, he began walking into the dining room. Hunt had no reason to suppose that she was without permission to follow Tigner while she was in the middle of talking to him.
Tigner's First Assignment of Error is overruled.
Tigner's Second Assignment of Error is as follows:
 THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO SUPPRESS AS APPELLEE'S WARRANTLESS SEARCH AND SEIZURE VIOLATED APPELLANT'S SIXTH AMENDMENT RIGHT TO COUNSEL.
Tigner cites Massiah v. United States (1964), 377 U.S. 201, for the proposition that he was entitled to the effective assistance of counsel during all significant stages of his criminal prosecution from the time of his indictment until trial. Citing People v. Clankie (Ill., 1988), 530 N.E.2d 448, Tigner contends that the alleged offenses with which this appeal is concerned are sufficiently related to the earlier offenses concerning which an indictment was pending, that hisSixth Amendment right to counsel in connection with the earlier charges had to be respected in connection with any proceedings in connection with the subsequent charges.
Finally, Tigner relies upon Maine v. Moulton (1985),474 U.S. 159, 106 S.Ct. 477, for the proposition that "* * *knowing exploitation by the State of an opportunity to confront the accused without counsel being present is as much a breach of the State's obligation not to circumvent the right to assistance of counsel as is the intentional creation of such an opportunity. Accordingly, the Sixth Amendment is violated when the State obtains incriminating statements by knowingly circumventing the accused's right to have counsel present in a confrontation between the accused and a State agent." Id., at 106 S.Ct. 487.
If the issue with which the above-quoted statement in Mainev. Moulton, supra, is concerned were truly presented in the case before us, we would find it a close question whether the drug offenses alleged on the evening of March 12, 1998, at Tigner's residence, were sufficiently closely related to the drug offenses committed at his residence on January 7, and January 9, 1998, to invoke the principle set forth in People v. Clankie, supra. That case involved a fourth burglary, committed at the same house, just thirteen days after three previous burglaries had been committed.
We conclude that we need not decide this issue, because there is nothing in this record to establish that the police officers who confronted Tigner on the night of March 12, 1998, were aware of the indictment pending against him. None of the police officers identified as having been involved in the investigation of the earlier offense were in common with those officers identified as having been involved in the investigation of the later offense. Neither of the officers who testified at the suppression hearing concerning the later offense indicated that they were aware that an indictment was pending against Tigner. The affidavit in support of the search warrant obtained in connection with the later offenses did not refer to the prior offenses, or to the fact that an indictment was pending.
Because the record fails to demonstrate that the police officers who confronted Tigner on the night of March 12, 1998, knew of the pending indictment against him, we cannot find that their conduct constituted a "knowing exploitation by the State of an opportunity to confront the accused without counsel being present," or a "knowing circumvention [of] the accused's right to have counsel present in a confrontation between the accused and a state agent." Therefore, we do not find that the conduct of the police officers confronting Tigner on the night of March 12, 1998, comes within the prohibition of Maine v. Moulton, supra.
We are not aware of any case that requires police officers, before engaging in an otherwise proper encounter with a citizen, to conduct an investigation to determine whether there are charges pending against that citizen closely related to the matters that the police officers are investigating, and we would be loathe to hold that there is such a requirement.
Tigner's Second Assignment of Error is overruled.
Both of Tigner's Assignments of Error having been overruled, the judgment of the trial court is Affirmed.
GRADY, P.J., and WOLFF, J., concur.